UNITED STATES of America, Plaintiff,

v.

REAL PROPERTY LOCATED AT 6625 ZUMIREZ DRIVE, MALIBU, CALIFORNIA, Defendant.

Gene Craig Wall, Security Pacific National Bank, Claimants.

No. CV 91–4531 MRP.

United States District Court, C.D. California.

Feb. 11, 1994.

Lee S. Arian, Asst. U.S. Atty., Asset Forfeiture Section, Los Angeles, CA, for plaintiff.

Paul L. Gabbert, Santa Monica, CA, Howard R. Price, Brodey & Price, Beverly Hills, CA, for defendant.

## OPINION

PFAELZER, District Judge.

This is an in rem civil forfeiture action brought by plaintiff United States of America (the "government") pursuant to the Comprehensive Crime Control Act of 1984, § 306(a), 21 U.S.C. § 881(a)(7), and the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), § 963(a), 18 U.S.C. § 981(a)(1)(C). Claimant Gene Craig Wall ("Wall") argues that in this case forfeiture under either statute would violate the Eighth Amendment's Excessive Fines Clause.

### I. BACKGROUND

Wall purchased the real property located at 6625 Zumirez Drive, Malibu, California (the "Defendant Property") in 1971 for approximately $59,000. The Defendant Property includes a 3,986 square foot, twelve room single family residence, and a 1,152 square foot workshop. No money derived from the illegal sale of controlled substances was used to purchase the Defendant Property. No money obtained from the submission of a false loan application was used to purchase the Defendant Property.

On July 30, 1991, pursuant to a search warrant, officers of the Los Angeles County Sheriff's Department located and removed from the Defendant Property 152 grams of cocaine, 4.7 grams of psilocybin, and one marijuana plant approximately three and a

half feet tall. The street value of the cocaine on the date of seizure was $15,200.

At the time of the search, Wall and his son William Craig Wall ("William") were arrested and charged with possessing cocaine for sale, a violation of California Health and Safety Code § 11351. Wall was acquitted of the state criminal charges. Wall's son was convicted of possessing cocaine for sale.

On September 23, 1991, the government filed its complaint for forfeiture of the Defendant Property pursuant to 21 U.S.C. § 881(a)(7) [1] on the ground that the Defendant Property was used to facilitate the distribution of narcotics in violation of 21 U.S.C. §§ 841(a)(1) and 846. Since Wall himself was acquitted of involvement in the possession for sale of these narcotics, the government's theory in seeking forfeiture is that Wall permitted his son to use the Defendant Property to distribute narcotics. Put differently, the government's argument is that Wall did not prevent his son from making such use of the Defendant Property.

On September 23, 1991, the government appraised the Defendant Property at $925,000. Based on this appraisal, Wall had $625,000 in equity in the property on that date. [2]

In connection with the forfeiture action as it was originally framed, the government deposed Wall on September 7, 1993. Three and a half years earlier, on February 12, 1990, Wall had submitted a loan application to Security Pacific National Bank to refinance the loan on the Defendant Property. The loan application stated that Wall's base employment income was $10,000 gross/month, and that his rental income was $4,000 net/month. On March 7, 1990, Security Pacific National Bank authorized a $300,000

---

1. Title 21 Section 881(a) provides that the following shall be subject to forfeiture:

(7) All real property ... which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment.

21 U.S.C. § 881(a)(7) (West Supp.1993).

2. The government filed a revised "drive-by" appraisal of the Defendant Property one week be-

fore the parties' motions were heard. The revised appraisal estimates the market value of the Defendant Property at $600,000, giving Wall a $300,000 equity interest in the property. The disparity between the government's initial and revised appraisals of the property does not affect the Court's holding since this Court's Eighth Amendment analysis does not significantly rely upon the value of the Defendant Property forfeited.

loan to Wall, $245,000 of the proceeds of which were used to pay off the existing loan on the Defendant Property. At the deposition in 1993, Wall stated that his income for 1990 was approximately $45,000. Even though Wall had kept the loan current since its inception, because of what he said at this deposition, the government amended its complaint to allege a new claim for forfeiture under 18 U.S.C. § 981(a)(1)(C) based on an alleged false loan application in violation of 18 U.S.C. §§ 1014 and 1344.

The government now moves for summary judgment of forfeiture of the Defendant Property under 18 U.S.C. §§ 981(a)(1)(C) and 1014. In opposition, Wall argues that the government lacks probable cause to forfeit the property under 18 U.S.C. § 981(a)(1)(C). Wall also moves for summary judgment on the ground that, assuming probable cause exists to forfeit the Defendant Property under 18 U.S.C. § 981(a)(1)(C) or 21 U.S.C. § 881(a)(7), forfeiture under either statute would violate the Eighth Amendment.

## II. DISCUSSION

### A. Application of the Eighth Amendment to civil forfeitures.

█ The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., amend. VIII. The purpose of the Excessive Fines Clause is to limit the government's power to extract payments as punishment for an offense. *Browning–Ferris Industries v. Kelco Disposal, Inc.,* 492 U.S. 257, 266–67, 109 S.Ct. 2909, 2915–16, 106 L.Ed.2d 219 (1989). The Supreme Court recently decided that forfeiture under 21 U.S.C. §§ 881(a)(4) and 881(a)(7) constitutes punishment and, as such, is subject to the limitations of the Eighth Amendment's Excessive Fines Clause. *Austin v. U.S.,* — U.S. —, —, 113 S.Ct. 2801, 2812, 125 L.Ed.2d 488 (1993). However, the *Austin* Court specifically declined to establish a test for determining whether a forfeiture is constitutionally excessive, leaving the lower courts to consider that question. *Id.* Thus, in this case of first impression, this Court establishes a multifac-

tor test for determining whether an in rem civil forfeiture violates the Eighth Amendment's Excessive Fines Clause.

### B. Multifactor test for analyzing the Excessive Fines Clause.

Wall and the government each propose a multifactor test for determining whether a forfeiture is constitutionally excessive. Wall proposes that the Court follow the approach taken in *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), for analyzing whether a particular punishment violates the Cruel and Unusual Punishment Clause of the Eighth Amendment. Under *Solem,* the Court must engage in a proportionality analysis, guided by the following criteria: (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed in the same jurisdiction for similar crimes; and (iii) the sentences imposed in other jurisdictions for the commission of the same crime. *Id.* at 290–92, 103 S.Ct. at 3009–11.

█ This Court rejects the *Solem* analysis. The *Solem* factors are guidelines for evaluating whether a punishment violates the Cruel and Unusual Punishment Clause, not the Excessive Fines Clause. When the *Austin* Court explicitly declined the invitation to establish a test for analyzing the Excessive Fines Clause, it implied that the lower courts are not bound by the guidelines enunciated in the context of the Cruel and Unusual Punishment Clause. Further, another recent Supreme Court decision casts doubt on *Solem*'s continuing viability. *See Harmelin v. Michigan,* 501 U.S. 957, —, 111 S.Ct. 2680, 2686, 115 L.Ed.2d 836 (1991) (Scalia, J. joined by Rehnquist, CJ.) (concluding that the Eighth Amendment contains no guarantee); *id.* 501 U.S. at —, 111 S.Ct. at 2707 (Kennedy, J. joined by O'Connor, and Souter, JJ. concurring in part and concurring in the judgment) (limiting *Solem*'s applicability, explaining that the second and third factors are applicable "only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality"). Finally, and most significantly, only the first of the three *Solem*

factors can be applied in the Excessive Fines context.

■ As a practical matter, it is impossible to meaningfully compare the value of property subject to a civil forfeiture based on a criminal act with the possible criminal penalty for that act imposed in the same and other jurisdictions. Wall urges the Court to compare the possible fine under the United States Sentencing Guidelines (the "Guidelines") for conviction of the criminal violation underlying the forfeiture action with the fine which would be imposed by the forfeiture. In other words, the Court is urged to compare the maximum fine for conviction of possession for sale of cocaine with Wall's equity interest in the forfeited property. Under Wall's analysis, Wall would have been subject to a term of imprisonment from 27–33 months and a fine of $6,000–$60,000 had he been convicted of possession with intent to distribute between 100 and 200 grams of cocaine. United States Sentencing Commission, *Guidelines Manual*, § 2D1.1 (Nov. 1993). Wall compares the maximum fine of $60,000 with his $625,000 equity interest in the Defendant Property and concludes that the fine is excessive. Wall then compares the maximum fine that could be imposed in California, Arizona, Nevada, Oregon and Hawaii for possession of cocaine for sale, ranging from $20,000 to $100,000, with his $625,000 equity interest and concludes that the fine is excessive.

Wall's approach has numerous flaws. Wall's analysis requires the Court to calculate a sentence for Wall as if he had been convicted of a crime for which he has in fact been acquitted. Further, even if the Court could calculate a likely fine in the event of a criminal conviction, there is no reason to use that as a guide to an appropriate sanction under a civil forfeiture scheme. Congress has seen fit to punish drug related activities through two different punitive schemes: a criminal statute imposing imprisonment and fines, and a civil statute imposing forfeiture. One is not intended to mitigate the effects of the other. *See* 18 U.S.C. § 3551(b) (provid-

ing that a "sanction authorized by section 3554 [forfeiture] . . . may be imposed in addition to the sentence" of imprisonment, fine or probation).

The Ninth Circuit recently recognized and affirmed the separate nature of the criminal and civil penalty provisions, holding that the Guidelines do not allow for downward departure on account of a civil forfeiture. *U.S. v. Crook,* 9 F.3d 1422 (9th Cir.1993). The *Crook* Court explained:

> [T]he Commission considered forfeiture when creating the guideline ranges for terms of imprisonment. We interpret the Guidelines' straightforward mandate that 'forfeiture is to be imposed . . . as provided by statute' [USSG § 5E1.4] to mean that the Commission viewed monetary forfeiture as entirely distinct from the issue of imprisonment.

*Id.* at 1426.

This Court rejects Wall's proposed test as inappropriate, as well as unworkable, and applies a multifactor test that focuses on an evaluation of the relationship of the property to the alleged offense, rather than an analysis of the property's actual monetary value.

■ In this Court's view, in determining whether a forfeiture violates the Excessive Fines Clause, three factors should be weighed, with no one factor being dispositive: (i) the inherent gravity of the offense compared with the harshness of the penalty; (ii) whether the property was an integral part of the commission of the crime; and (iii) whether the criminal activity involving the defendant property was extensive in terms of time and/or spatial use.[3]

■ The first of these factors, the inherent gravity of the offense compared with the harshness of the penalty, emanates from *Solem v. Helm,* 463 U.S. 277, 290–95, 103 S.Ct. 3001, 3009–12, 77 L.Ed.2d 637 (1983), but is appropriately applied in the Excessive Fines context. The word "excessive" in the Excessive Fines Clause implicitly prohibits those fines that exceed the crime alleged. *See Harmelin v. Michigan,* 501 U.S. 957, —— n.

---

**3.** This is similar to the approach proposed by the government in opposition to Wall's summary judgment motion. This test also includes many of the factors considered relevant by the Third Circuit. *United States of America v. RR# 1, Box 224,* 14 F.3d 864, 873–76 (3d Cir.1994).

9, 111 S.Ct. 2680, 2693 n. 9, 115 L.Ed.2d 836 (1991) (Scalia, J. joined by Rehnquist, CJ.) (assumes, for the sake of argument, that Excessive Fines must have meant "disproportionate fines"); *id.* 501 U.S. at ——, 111 S.Ct. at 2709 (White, J. joined by Blackmun and Stevens, JJ. dissenting) (notes that the term "excessive" fines suggests that a determination of excessiveness should be based at least in part on whether the fine imposed is disproportionate to the crime committed).

In making a comparison between the inherent gravity of an offense and the fine imposed, "courts are competent to judge the gravity of an offense." *Solem,* 463 U.S. at 292, 103 S.Ct. at 3011. It is widely accepted that violent crimes are more serious than nonviolent crimes, completed crimes are more serious than attempted crimes, and intentional conduct is more culpable than negligent conduct. *Id.* at 292–93, 103 S.Ct. at 3010–11.

■■■ However, unlike Eighth Amendment analysis in the criminal penalty context, in the civil forfeiture context, the court more often than not faces a situation in which the claimant has not been shown to be guilty of any offensive conduct for which a penalty has or could be imposed. Probable cause for a civil forfeiture is comparatively easy for the government to establish and it may seek to forfeit property linked with criminal activity under circumstances where: (1) the claimant has been convicted of the criminal act or acts underlying the forfeiture; (2) the claimant has never been charged with any crime; and (3) the claimant has been charged and acquitted of the act or acts underlying the forfeiture. Clearly, the focus of Eighth Amendment analysis should be on the claimant's conduct, the gravity of which decreases in each of the three situations.

In the first situation, the court can easily evaluate the gravity of the offensive conduct since the court need not engage in assumptions: the claimant did in fact commit the offense which forms the basis of the government's probable cause to forfeit the property. In the second situation, the court cannot assume that the claimant committed the offense. Neither can it assume that he did not. This claimant's conduct must be viewed as necessarily less grave than that of the claimant convicted in the first situation, but the conduct is inherently more grave than that of the claimant in the third situation. The behavior of the claimant in the third situation must be considered the least grave: the claimant has been charged and acquitted of the underlying offense, and cannot be treated "as if" he had committed that offense for purposes of evaluating the gravity of his conduct.

■■■ Thus, for purposes of the "inherent gravity" prong of the Eighth Amendment test, the court must first determine into which category the claimant's conduct falls. Whenever the claimant's conduct falls outside of the first category, the court must be careful to focus only on the inherent gravity of the offensive conduct engaged in by the claimant himself, rather than the inherent gravity of the offense or offenses that the government had probable cause to believe were committed on the property.[4]

**4.** In the first prong of its Eighth Amendment analysis, the Court focuses on the culpability of the claimant, whereas in the second prong, the Court focuses on the relationship between the defendant property and the alleged offense. This dual focus on the culpability of the property owner and the property itself has not been expressly stated before, however, this Court determines that such a focus is necessary in any Excessive Fines analysis.

In *Austin v. U.S.,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), the Court divided 5–4 regarding whether analysis of the property owner's culpability is necessary to the conclusion that the Excessive Fines Clause applies to civil forfeitures. The majority concludes that the theories justifying forfeiture "rest, at bottom, on the notion that the owner has been negligent in allowing his property to be misused and that he is properly punished for that negligence." *Id.* —— U.S. at ——, 113 S.Ct. at 2808. That the degree of negligence or culpability of the claimant is relevant to whether the forfeiture is excessive is implicit in that conclusion. Because the Court determined that civil forfeiture, in part, punishes the claimant for his offensive conduct, it is appropriate to analyze whether the fine is excessive in comparison with the claimant's conduct.

Justice Scalia argues in his concurring opinion that culpability of the property owner is not necessary to establish that civil forfeitures are punitive. Rather, the government's taking of lawful property, without a compensatory purpose, is enough to render a civil forfeiture "puni-

■ In evaluating the harshness of the penalty imposed, the court must not only consider the monetary value of the property forfeited, but also the intangible value of the particular type of property involved. Society and the courts place a higher value on real property, in particular the home, than on personal property. In a recent forfeiture decision, the Supreme Court affirmed the essential principle that "[i]ndividual freedom finds tangible expression in property rights. At stake in this and many other forfeiture cases are the security and privacy of the home and those who take shelter within it." *United States v. James Daniel Good Real Property et al.,* — U.S. —, —, 114 S.Ct. 492, 505, 126 L.Ed.2d 490 (1993). *See also Payton v. New York,* 445 U.S. 573, 601, 100 S.Ct. 1371, 1388, 63 L.Ed.2d 639 (1980) ("[R]espect for the sanctity of the home ... has been embedded in our traditions since the origins of the Republic.")

■ The second factor, whether the property was an integral part of the commission of the crime, evolves from the traditional notion that in rem forfeitures are based on the legal fiction that "the thing is primarily considered the offender." *J.W. Goldsmith, Jr.-Grant Co. v. United States,* 254 U.S. 505, 511, 41 S.Ct. 189, 191, 65 L.Ed. 376 (1921); *Austin v. U.S.,* — U.S. —, —, 113 S.Ct. 2801, 2808, 125 L.Ed.2d 488 (1993). Justice Scalia argues that this factor should be the sole consideration in analyzing an excessive in rem forfeiture. According to Justice Scalia:

The question is not *how much* the confiscated property is worth, but *whether* the

confiscated property has a close enough relationship to the offense.

.　　.　　.　　.　　.

The relevant inquiry for an excessive forfeiture under § 881 is the relationship of the property to the offense: Was it close enough to render the property, under traditional standards, "guilty" and hence forfeitable?

*Austin v. U.S.,* — U.S. —, —, 113 S.Ct. 2801, 2815, 125 L.Ed.2d 488 (1993) (Scalia, J. concurring in part and concurring in the judgment). *See also id.* — U.S. at — n. 15, 113 S.Ct. at 2812 n. 15 (in reference to Justice Scalia's concurrence, the majority notes that it "does not rule out the possibility that the connection between the property and the offense may be relevant"); *United States v. James Daniel Good Real Property,* — U.S. —, — & n. 2, 114 S.Ct. 492, 515 & n. 2, 126 L.Ed.2d 490 (1993) (Thomas, J. concurring in part and dissenting in part) (notes that current practice under § 881(a)(7) appears far removed from the legal fiction that the property is in some sense "guilty" of an offense).

■ The third factor is whether the criminal activity involving the defendant property was extensive in terms of time and/or spatial use. Under this factor, the Court looks not only at whether the defendant property was an integral part of the criminal activity, but whether the defendant property played an extensive or pervasive role in the commission of the crime. In *Alexander v. United States,* — U.S. —, —, 113 S.Ct. 2766, 2776, 125 L.Ed.2d 441 (1993), the Court considered whether an in personam criminal forfeiture of defendant's entire business violated the

tive" and therefore protected by the Eighth Amendment. *Id.* — U.S. at — – —, 113 S.Ct. at 2813–14 (Scalia, J. concurring in part and concurring in the judgment); *id.* — U.S. at —, 113 S.Ct. at 2815 (Kennedy, J., concurring in part and concurring in the judgment). Apparently disregarding the role of the claimant in causing the forfeiture, Justice Scalia argues that the only relevant question in the Excessive Fines analysis is the relationship between the forfeited property and the offense. *Id.* — U.S. at —, 113 S.Ct. at 2815. This Court agrees that the "relationship test" is a relevant consideration, and analyzes it under the second prong of its Excessive Fines test. However, the use of the

word "offense" in the phrase "relationship of the property to the offense" implies that an offense or at least offensive conduct has occurred, giving rise to the civil forfeiture. Since the claimant is the person punished for the offense, and since an offense cannot occur without some human participation, it would be illogical not to consider relevant the extent of the claimant's involvement in the offense. By addressing both the claimant's and the property's relationship to the offensive conduct, the Court believes that its multifactor test accurately determines whether the punishment imposed by a civil forfeiture violates the Excessive Fines Clause.

Excessive Fines Clause. The Court remanded the case for further consideration of the Excessive Fines issue, with the following instruction:

It is in the light of the extensive criminal activities which petitioner apparently conducted through this racketeering enterprise over a substantial period of time that the question of whether or not the forfeiture was "excessive" must be considered. We think it preferable that this question be addressed by the Court of Appeals in the first instance.

*Id.* —— U.S. at ——, 113 S.Ct. at 2776. This Court finds that the *Alexander* analysis is also relevant to whether a particular forfeiture is an excessive penalty in the in rem civil forfeiture context.

Consideration and application of the multifactor test enunciated here will give renewed significance to the Eighth Amendment's Excessive Fines Clause and will have the added benefit of checking the government's potential for abusive use of the civil forfeiture statutes. The constitutional protection of the Excessive Fines Clause is especially important in the forfeiture context "where the Government has a direct pecuniary interest in the outcome of the proceeding." *United States v. James Daniel Good Real Property,* —— U.S. ——, ——, 114 S.Ct. 492, 502, 126 L.Ed.2d 490 (1993); *Harmelin v. Michigan,* 501 U.S. 957, —— n. 9, 111 S.Ct. 2680, 2693 n. 9, 115 L.Ed.2d 836 (1991) (Scalia, J.) ("[I]t makes sense to scrutinize governmental action more closely when the State stands to benefit."). Failure to strictly enforce the Excessive Fines Clause inevitably gives the government an incentive to investigate criminal activity in situations involving valuable property, regardless of its seriousness, but to ignore more serious criminal activity that does not provide financial gain for the government.[5]

*C. Wall's motion for summary judgment that the government's forfeiture of the Defendant Property under 21 U.S.C. § 881(a)(7) would violate the Eighth Amendment: application of the multifactor test.*[6]

 1. Inherent gravity of the offense compared with the harshness of the penalty.

In this case, Wall has been acquitted of the crime of possession of cocaine for sale. Thus, Wall's conduct fits into the third or least inherently grave category, in which the claimant has been charged and acquitted of the underlying crime. The government seeks to forfeit the Defendant Property on the ground that Wall permitted the Defendant Property to be used to facilitate the commission of that crime by Wall's son, William, or on the alternative ground that the same evidence used in Wall's criminal trial furnishes probable cause to believe that the Defendant Property was used to commit the crime of which Wall was acquitted. The Court is mindful that, under either theory, Wall cannot be treated "as if" he committed the crime of possession of cocaine for sale.

Nevertheless, the Supreme Court has recognized "the serious threat to individuals and society posed by drug offenses." *United States v. Certain Real Property and Premises Known as 38 Whalers Cove Drive,* 954 F.2d 29, 38 (2d Cir.1992), *cert. denied, sub. nom., Levin v. United States,* —— U.S. ——, 113 S.Ct. 55, 121 L.Ed.2d 24 (1992). Further, the efficacy of forfeiture as a tool in the

---

**5.** The *James Daniel Good* decision cites a memorandum illustrating the problem with the government's incentive under the forfeiture statute:

The extent of the Government's financial stake in drug forfeiture is apparent from a 1990 memo, in which the Attorney General urged United States Attorneys to increase the volume of forfeitures in order to meet the Department of Justice's annual budget target:

'We must significantly increase production to reach our budget target.

... Failure to achieve the $470 million projection would expose the Department's forfeiture program to criticism and undermine confidence in our budget projections. Every effort must be made to increase forfeiture income during the remaining three months of [fiscal year] 1990.' Executive Office for United States Attorneys, U.S. Dept. of Justice, 38 United States Attorney's Bulletin 180 (1990).

*United States v. James Daniel Good Real Property,* —— U.S. ——, —— n. 2, 114 S.Ct. 492, 502 n. 2, 126 L.Ed.2d 490 (1993).

**6.** For purposes of bringing his motion for summary judgment on Eighth Amendment grounds, Wall assumes that the government has probable cause to forfeit the Defendant Property under 21 U.S.C. § 881(a)(7).

drug war has led to acceptance of the notion that even if the owner has not been found guilty of a crime, his property may still be found culpable. *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 361, 104 S.Ct. 1099, 1104, 79 L.Ed.2d 361 (1984). Obviously, this technical legal focus on the property as the culprit leads to very harsh results when the owner of the property has been acquitted of the crime underlying the forfeiture, and the same evidence on the basis of which he was acquitted is used as the probable cause for the forfeiture of his home. Under these circumstances, the government appears to be seeking to punish the property for a crime for which it cannot punish its owner. Recognizing the difficulty inherent in this position, the government places its principal emphasis on the argument that since the father did not prevent his son from occupying the family home while dealing in relatively small amounts of drugs, forfeiture of the home is justified. This argument invites attention to the gravity of the *father's* offensive behavior, which is the correct focus for the analysis of this element of the test.

Wall allowed his son to live at the family home while William used and sold drugs. William admitted in his deposition testimony in connection with this forfeiture action that he has had a drug problem for a significant portion of his life. At the time of the deposition, William was in a drug rehabilitation program. While drug use represents a major problem affecting our society, Wall's permitting his son to use and sell drugs at home is not as serious as permitting his son to commit crimes directly against the persons and property of others while living at home. *See Harmelin v. Michigan,* 501 U.S. 957, ——, 111 S.Ct. 2680, 2716, 115 L.Ed.2d 836 (1991) (White, J. joined by Blackmun and Stevens, JJ. dissenting) ("[u]nlike crimes directed against the persons and property of others, possession of drugs affects the criminal who uses the drugs most directly"). Further, the fact that this case involves a claimant and his son is of particular significance. There is a qualitative difference between a landowner knowingly or negligently leasing or renting his property to be used for an illegal purpose, and a father knowingly or negligently permitting his son to continue living in his home while engaging in illegal conduct. While one might hope that the forfeiture laws would induce landowners to take greater care in choosing to whom they transfer possession of their property, *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 688, 94 S.Ct. 2080, 2094, 40 L.Ed.2d 452 (1974), parents cannot choose their children. It is unrealistic to expect that forfeiture laws will induce parents to evict children from their homes. This does not mean that parents should be shielded from the forfeiture laws; rather, it means that the Court considers the relationship between the parties in evaluating the gravity of the landowner's conduct.

Finally, even though forfeiture can apply where the claimant is acquitted of the criminal charges, *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 361, 104 S.Ct. 1099, 1104, 79 L.Ed.2d 361 (1984), the actions of a claimant adjudged innocent are necessarily less serious than those of a claimant who has been found guilty. The claimant in *Austin v. U.S.,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), pleaded guilty to one count of possessing cocaine with intent to distribute and was sentenced to seven years of imprisonment. The government sought to forfeit Austin's mobile home and auto body shop in which they found small amounts of marijuana and cocaine. *Id.* —— U.S. at ——, 113 S.Ct. at 2803. Although the *Austin* decision gave no guidance as to what factors the lower court ought to consider on remand, the Supreme Court's remand implies that forfeiture of the claimant's property could be excessive in spite of the claimant's criminal activity. This set of facts, in which the claimant was acquitted of the underlying offense, presents an even more compelling case for such a conclusion.

In addition to looking at the gravity of the offense, the Court must also consider the harshness of the penalty imposed. Here, the government seeks forfeiture of Wall's family home. While forfeiture will penalize both the son and the father, it is the father who will sustain the real loss. In forfeiture cases, the legal fiction upon which forfeiture is based makes the Defendant Property sub-

ject only to complete forfeiture. No intermediate position exists. 21 U.S.C. § 881(a)(7) (West's Supp.1993). The government's forfeiture would not only permanently and completely deprive Wall of all the rights of ownership in the home he has maintained for twenty-two years, but would also operate to evict him from it. This is unquestionably a severe penalty when Wall himself has not been found guilty of any crime. In addition to Wall's substantial equity interest in the Defendant Property, $625,000, Wall's "right to maintain control over his home, and to be free from governmental interference, is a private interest of historic and continuing importance." *United States v. James Daniel Good Real Property,* — U.S. ——, ——, 114 S.Ct. 492, 501, 126 L.Ed.2d 490 (1993). *See also United States v. Karo,* 468 U.S. 705, 714–15, 104 S.Ct. 3296, 3302–03, 82 L.Ed.2d 530 (1984); *Payton v. New York,* 445 U.S. 573, 590, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639 (1980).

On balance, a comparison of the gravity of the offense with the harshness of the penalty weighs in favor of Wall's position that forfeiture of his home would violate the Excessive Fines Clause. Wall's failure to prevent his son's illegal drug activities, if he could have done so, is perhaps grave, but certainly not as grave as direct involvement in the crime itself. Yet the penalty is as severe and permanent as it would have been if Wall had committed the crime. While to "objectively" evaluate the proportionality between a crime and a penalty can often be difficult, the Court can fairly conclude that the fine imposed in this case greatly exceeds that which would be appropriate in light of the offensive behavior involved.

2. Whether the property was an integral part of the commission of the crime.

■■■ The Court next considers the relationship between the Defendant Property and the possession for sale of cocaine. Clearly, there is nothing inherently unlawful about possessing a house. Rather, the issue is whether the house and the criminal activities are sufficiently interrelated to find the property tainted by unlawful use and hence forfeitable.

Wall did not use any money derived from illegal sources to purchase the Defendant Property in 1971. There is likewise no evidence that Wall received revenue from the property which enabled him to conduct an illegal enterprise on the property. Further, there is no support for the argument that Wall or his son sold drugs *because* they lived on the Defendant Property. However, the government argues that the house was integral to illegal activities on the Defendant Property by providing cover for William's drug sales. Specifically, the government speculates that William's legitimate leather goods business on the property provided a cloak of legitimacy to the illegal drug traffickers who frequented the house.

The Court finds these arguments unpersuasive. First, the government's argument that the legitimate business cloaked the illegitimate business is mere conjecture. Under this rationale, the government could theoretically forfeit numerous legitimately utilized properties without any proof that the property contributed to illegal ends. Such a result runs contrary to the purpose of the forfeiture laws, and would clearly be excessive under the Eighth Amendment.

■■■ Second, William's possession and sale of cocaine from his father's home is insufficient to establish a relationship between the crime and the property. Under this prong of the Eighth Amendment analysis, for the property to be the site of illegal activity, without more, does not render the property an integral part of the activity. The mere fact that the criminal activity occurred at the property does not make the property "guilty" of an offense, "as could reasonably be argued of, for example, the distillery in *Dobbins's Distillery v. United States,* 96 U.S. (6 Otto.) 395, 24 L.Ed. 637 (1878), or the pirate vessel in *Harmony v. United States,* 43 U.S. (2 How.) 210, 11 L.Ed. 239 (1844)." *United States v. James Daniel Good Real Property,* — U.S. ——, ——, 114 S.Ct. 492, 515, 126 L.Ed.2d 490 (1993) (Thomas, J. concurring in part and dissenting in part). *See also J.W. Goldsmith, Jr.–Grant Co. v. United States,* 254 U.S. 505, 510–511, 41 S.Ct. 189, 190–191, 65 L.Ed. 376 (1921) (forfeiture of goods concealed to avoid taxes);

*The Palmyra,* 25 U.S. (12 Wheat.) 1, 14–15, 6 L.Ed. 531 (1827) (forfeiture of vessel for piracy).

In this case, the Defendant Property is nothing more than a place at which drugs were sold. There is no other link between the property and the illegal activity. Unlike cases in which the forfeited property is integral to the commission of the crime, forfeiture of the Defendant Property in this case does not rid society of the instrumentality of the crime or eliminate the resources of any criminal enterprise. Instead, it evicts Wall and his son from their home for the purported purpose of deterring them from future unlawful activities. However, forfeiture of the Walls' family home does little to serve that purpose. *See United States v. Real Property: 835 Seventh Street Rensselaer,* 820 F.Supp. 688, 696 (N.D.N.Y.1993) ("the financial strain placed upon this claimant from forfeiture of his family's home could very well have the effect of increasing claimant's propensity to engage in illegal activities").

3. Whether the criminal activity involving the defendant property was extensive in terms of time and/or spatial use.

The last factor is an extension of the second factor. To the extent that the property is integral to the criminal activity, the Court also considers the time period over which the property was used, and the spatial use of the property. In this case, the Court has already determined that there is a limited relationship between the Defendant Property and illegal drug activity. However, to the extent that the property facilitated drug use and sales, the Court also evaluates the evidence available on this factor.

■ In this case, the government presents sparse evidence to establish the time frame over which any drug activity occurred. The government relies substantially on hearsay. In obtaining a search warrant in this case, the government relied on an anonymous telephone caller and a confidential informant who claimed to have observed Wall selling cocaine from the Defendant Property over a ten day period, from July 20, 1991 to July 30, 1991. The statements made by the anonymous informants are hearsay and provide unreliable evidence as to how long any illegal activity took place. The government also relies on testimony given by a tenant during Wall's criminal trial that Wall sold cocaine at the Defendant Property in the period 1984 through 1987. This testimony is also unreliable, as Wall had no opportunity to cross-examine the witness on forfeiture issues at his state criminal trial. Further, the fact that Wall was acquitted in the state trial makes the evidence supporting Wall's pattern of drug activity less credible.

■ Finally, the government points out that in May of 1981, Wall was convicted of cultivating marijuana in 1980. The government uses the conviction to argue that Wall conducted illegal activities on the Defendant Property for ten years. Without other reliable evidence, Wall's isolated conviction for cultivating marijuana eleven years prior to the search in this case is of extremely limited value in establishing the time frame over which Wall's alleged illegal conduct occurred. Since Wall was acquitted of the state criminal charges, the Court cannot even assume that Wall was ever personally involved in drug activities at the Defendant Property after his 1981 conviction.

The Court also considers the spatial use of the Defendant Property for illegal conduct. During the search, the government uncovered narcotics and narcotics paraphernalia in five bedrooms, a shed, and the vegetable garden. This is the strongest evidence of a spatially extensive use of the property for illegal activities, and the only factor that substantially weighs in support of forfeiting the Defendant Property.

Clearly there are arguments for and against forfeiture of the Defendant Property in this situation. Giving the government the best of the argument, Wall is not a totally "innocent landowner" and did permit illegal conduct upon his property. However, the Constitution protects against excessive punishments for wrongdoing. Applying the three factors to the circumstances in this case, the Court finds that forfeiture of the Defendant Property involving Wall's $625,000 in equity would be violative of the Excessive Fines Clause.

D. *The government's motion for summary judgment for forfeiture of the Defendant Property under 18 U.S.C. § 981(a)(1)(C).*

The government moves for summary judgment of forfeiture of the Defendant Property under 18 U.S.C. § 981(a)(1)(C), which allows the forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section ... 1014." Section 1014 of Title 18 makes it a violation for

[w]hoever knowingly makes any false statement or report ... for the purpose of influencing in any way the action of ... any institution the accounts of which are insured by the Federal Deposit Insurance Corporation, ... upon any application ... or loan....

On February 12, 1990 Wall submitted a loan application to Security Pacific National Bank, the accounts of which are insured by the Federal Deposit Insurance Corporation. The application stated that Wall's gross employment income was $10,000/month and rental income was $4,000/month. The loan application was not in Wall's handwriting, but was signed by Wall. On March 7, 1990 the bank authorized a $300,000 loan, the proceeds of which were primarily used to refinance the Defendant Property. The loan has been continuously maintained in a current condition.

As discussed, during the discovery for the forfeiture claim based on drug trafficking, the government took Wall's deposition. At the deposition, Wall testified that his income for 1990 was approximately $45,000, with zero net income from rentals. He also stated that he "could have verbally given [the loan information] to an escrow officer or whoever was taking the loan application."

▄▄▄ Based on the deposition testimony alone, the government seeks summary judgment that there is probable cause to believe that Wall violated § 1014 and that the government is therefore entitled to forfeit the property under § 981(a)(1)(C). No federal prosecution has been instituted

against Wall nor does the government appear ready to commence one. Nevertheless, under the statute, once the government establishes probable cause for forfeiture, the burden shifts to the claimant to prove that the subject property is not subject to forfeiture. *U.S. v. Wollman,* 945 F.2d 79, 81 (4th Cir. 1991). To defeat the government's motion, the claimant must either refute the government's showing of probable cause, or come forward with affirmative evidence and prove that the claimant did not violate § 1014. *U.S. v. One 56–Foot Yacht Named Tahuna,* 702 F.2d 1276, 1281 (9th Cir.1983).

▄▄▄ In this case, Wall opposes the motion by refuting the government's showing of probable cause. Wall's opposition to the government's motion demonstrates that: (1) the government has no evidence that Wall *knowingly* lied on his loan application; (2) the government does not dispute the fact that Wall did not personally complete his loan application; and (3) Wall's amended deposition testimony states that he never told anyone that his monthly income was $10,000 or that the net rental income was $4,000 per month.

A summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Here, Wall adequately establishes the existence of genuine issues of material fact in dispute regarding the government's showing of probable cause to believe that Wall violated § 1014. Therefore, the Court denies the government's motion for summary judgment on this claim.

E. *Wall's motion for summary judgment that forfeiture under 18 U.S.C. § 981(a)(1)(C) would violate the Excessive Fines Clause.*

Wall also moves for summary judgment on the ground that, assuming the government has probable cause to forfeit the property under 18 U.S.C. § 981(a)(1)(C), forfeiture would violate the Excessive Fines Clause.[7]

---

7. Wall assumes probable cause exists to forfeit the property under 18 U.S.C. § 981(a)(1)(C) only for the purpose of bringing his summary judgment motion on Eighth Amendment grounds.

Thus, Wall's motion for summary judgment does not affect the Court's denial of the government's motion for summary judgment that probable

Although the *Austin* decision only applied the Eighth Amendment to forfeitures under 21 U.S.C. § 881(a)(7), this Court holds that the Eighth Amendment also applies to forfeitures under 18 U.S.C. § 981(a)(1)(C). The Eighth Amendment provides protection against abusive punishment by the government. *Browning–Ferris Industries v. Kelco Disposal, Inc.*, 492 U.S. 257, 266–67, 109 S.Ct. 2909, 2915–16, 106 L.Ed.2d 219 (1989). In *Austin*, the Court held that civil forfeitures under 21 U.S.C. § 881(a)(7) in part serve a punitive purpose, thereby entitling a claimant to Eighth Amendment protection. *See United States v. Halper*, 490 U.S. 435, 448, 109 S.Ct. 1892, 1901, 104 L.Ed.2d 487 (1989) ("a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment").

This Court holds that 18 U.S.C. § 981(a)(1)(C) in part serves a punitive purpose. Under 18 U.S.C. § 981(a)(1)(C) there is no correlation between the extent of the property subject to forfeiture and the magnitude of the statutory violation. For example, in this case the statute provides no means of forfeiting only the $300,000 obtained from the allegedly fraudulent loan. Rather, the statute operates to forfeit Wall's entire interest in his $925,000 home, with the government receiving a windfall of Wall's untainted $625,000 equity interest. Further, there is no evidence that the bank is in any danger of losing any of its investment: Wall has maintained a perfect payment record, even in the face of potential forfeiture of the property; the value of the Defendant Property provides ample security for the bank loan; and the bank presently earns interest at an interest rate above today's market. The conclusion is inescapable that forfeiture of Wall's home would not serve a solely remedial purpose and that Wall is entitled to Eighth Amendment protection. *See United States v. Taylor*, 13 F.3d 786, 789 (4th Cir.1994) (concluding that Congress intends that forfeiture under 18 U.S.C.A. § 981 serve a punitive purpose and that the reasoning of *Austin* is equally applicable to forfeiture actions under

cause exists to forfeit the property under 18

§ 981). Accordingly, the Court now applies its three factor test to the forfeiture of Wall's property under 18 U.S.C. § 981(a)(1)(C).

1. Inherent gravity of the offense compared with the harshness of the penalty.

For purposes of his motion based on the Eighth Amendment, Wall concedes that the government has probable cause to believe that Wall submitted a false loan application in violation of 18 U.S.C. § 1014. However, the government has never prosecuted Wall for this violation, and appears unlikely to do so. Thus, on the false loan theory, Wall's conduct fits into the second, and intermediate level of gravity: that of an uncharged and untried claimant. Since the Court may not assume that Wall would be found innocent or guilty if tried for violating the underlying statute, the Court must simply evaluate the gravity of the behavior that gave the government probable cause to forfeit the property.

At most, Wall's submission of a loan application with an allegedly false statement is a non-violent, passive crime. The criminal laws make clear that non-violent crimes are less serious than crimes involving violence or the threat of violence. *Solem v. Helm*, 463 U.S. 277, 292–93, 103 S.Ct. 3001, 3010–11, 77 L.Ed.2d 637 (1983). Also, as a matter of common sense, the severity of Wall's behavior cannot be regarded as great. While Wall did receive $300,000 based on the loan application, Wall did not dissipate the proceeds of the loan, but instead used it to pay off an existing mortgage on the Defendant Property. Wall merely substituted one secured loan for another. The Defendant Property is presently valued at between $600,000 and $925,000, providing ample security for the $300,000 loan. Obviously this case is substantially different from one in which a person lied on a loan application in order to get a loan, the proceeds of which were squandered. The Court observes that, in such a case, the government would have no assets into which it could trace the proceeds, and hence, no property to forfeit. Thus, ironically, a claimant who put the loan proceeds back into property which protects the *bank's* loan is left vulnerable to the *government's* forfei-

U.S.C. § 981(a)(1)(C).

ture of that property, whereas a claimant who dissipated the loan proceeds would, in all likelihood, escape forfeiture by the government.

Further, the magnitude of the falsity of Wall's statement has not been established. Wall testified that he earned $45,000 in income the year that he submitted the loan application. Neither party has presented evidence to show the disparity between Wall's actual income and Wall's statement on the loan application.[8] However, it is clear that Wall's income was and continues to be sufficient to pay the loan since Wall has always maintained his payments and the bank has never attempted to recall Wall's loan because of the allegedly false statement.

Under the facts of this case, it is apparent that Wall's submission of a loan application with a false statement is not as serious as the many FIRREA violations now being prosecuted in many district courts around the country. The majority of those cases involve intentional misrepresentations regarding the value of the security for a loan which subjected the financial institution involved to a risk of substantial loss. Here, at most, Wall's alleged false statement subjected the bank to the risk that he would be unable to make his payments. Thus, although the bank might be subjected to the inconvenience and expense of a foreclosure in the event of default, it would nevertheless always be able to recover the amount due on the loan. Forfeiture of Wall's home and entire equity interest, on the other hand, is a very severe penalty. On balance, the harshness of forfeiting Wall's home outweighs the gravity of Wall's behavior.

2. Whether the property was an integral part of the commission of the crime.

The government argues that the Defendant Property was integral to the false loan application for two reasons: (1) because the government can trace the loan proceeds into the Defendant Property, and (2) because the Defendant Property was the collateral for the loan. Superficially, the government's arguments seem persuasive. However, a closer analysis shows that the Defendant Property actually has little relationship to Wall's underlying conduct.

First, the government's "tracing the loan proceeds" argument relates only to whether the government has a legal ground to forfeit the property under the statute, not to whether the property was integral to the crime. Under 18 U.S.C. § 981(a)(1)(C), the government may forfeit any property whose proceeds can be traced to the submission of a false loan application under 18 U.S.C. § 1014. Assuming Wall lied on his loan application, the government would be entitled to forfeit Wall's home, or anything else Wall purchased with the loan proceeds since the proceeds can be traced from the refinancing of the Defendant Property. In other words, the "tracing the proceeds" argument goes to establish the property's forfeitability under the statute, but does not address the Eighth Amendment "integral to the crime" analysis. Unless the claimant's false statement specifically relates to the forfeited property, the property itself would not have a close enough relationship to the crime to render it "guilty" property for the purpose of Eighth Amendment analysis. For example, a claimant's inclusion of an inflated real property appraisal designed to qualify the claimant for a larger loan could well be considered a false statement closely related to the forfeited property, and hence forfeiture of the real property would more likely not violate the Eighth Amendment.[9]

In this case, Wall allegedly inflated his monthly income on the loan application. Neither party disputes that Wall's allegedly

---

8. The loan application stated that Wall's base employment income was $10,000 gross/month and that his rental income was $4,000/month. Neither party has calculated Wall's total *net* income per year based on the above statement.

9. Under the government's theory, anything that is the end product of a false loan would be integral to the crime. The following hypothetical clearly illustrates why the government's theory cannot be correct. Consider a person who submitted a false loan application stating that his income was $150,000 a year, and on that basis received a $20,000 loan. If that person then put the loan money in a segregated bank account, and three years later purchased a car, the government would argue that the car was integral to the false loan. This obviously cannot be what is meant by property being "integral" to the crime.

false statement had nothing to do with the value of the Defendant Property. Thus, while Wall's statement might have falsely increased the likelihood that Wall would be able to maintain monthly mortgage payments, the false statement had nothing to do with the Defendant Property.

 The government's second argument, that the property is collateral for the false loan, is not enough to make the property "guilty," and hence forfeitable. Wall did not submit a false appraisal of the Defendant Property to inflate the bank's assessment of the collateral for the loan. Had Wall done so in order to receive a loan, the Court possibly might agree that there is a relationship between the submission of the false loan application and the property. By contrast, in this case, the Defendant Property was and continues to be more than sufficient collateral for the bank's $300,000 lien.

Therefore, the Court finds that neither of the government's theories supports the conclusion that there is a close relationship between the Defendant Property and Wall's conduct giving the government probable cause to believe Wall violated 18 U.S.C. § 1014.

3. Whether the criminal activity involving the defendant property was extensive in terms of time and/or spatial use.

The third factor is an extension of the second factor. Since the Court finds little relationship between Wall's conduct and the Defendant Property, there is no need to extensively examine the period of time over which this relationship occurred.

To the extent there is a relationship between the Defendant Property and the submission of a false loan, there is no evidence that Wall ever violated 18 U.S.C. § 1014 in the past. Wall's conduct in this case, even if amounting to a single violation of 18 U.S.C. § 1014, cannot be deemed "extensive in terms of time." The Court finds the "spatial extensiveness" factor inapplicable to this situation.

In applying the Eighth Amendment test, all three factors weigh decisively in favor of Wall's position. Therefore, the Court concludes that forfeiture of Wall's home under 18 U.S.C. § 981(a)(1)(C) would be violative of the Excessive Fines Clause.

### ORDER

1. The government's motion for summary judgment that it is entitled to forfeit the Defendant Property under 18 U.S.C. § 981(a)(1)(C) is denied.

2. Wall's motion for summary judgment that forfeiture of the Defendant Property under 21 U.S.C. § 881(a)(7) would violate the Excessive Fines Clause of the Eighth Amendment is granted.

3. Wall's motion for summary judgment that forfeiture of the Defendant Property under 18 U.S.C. § 981(a)(1)(C) would violate the Excessive Fines Clause of the Eighth Amendment is granted.