IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

| | | |
|---|---|---|
| PAGE G. STUART | ) | FOR PUBLICATION |
| | ) | |
| Appellant | ) | FILED: MARCH 2, 1998 |
| | ) | |
| v. | ) | DAVIDSON COUNTY |
| | ) | |
| STATE OF TENNESSEE | ) | HON. IRVIN H. KILCREASE, JR., |
| DEPARTMENT OF SAFETY | ) | CHANCELLOR |
| | ) | |
| Appellee | ) | NO. 01-S-01-9612-CH-00239 |

FILED

March 2, 1998

Cecil W. Crowson
Appellate Court Clerk

For Appellant:                    For Appellee:

RICHARD MCGEE                     JOHN KNOX WALKUP
JOHN E. RODGERS, SR.              Attorney General and Reporter
Nashville, TN
                                  MICHAEL E. MOORE
                                  Solicitor General

                                  GORDON W. SMITH
                                  Associate Solicitor General

                                  VICTOR S. JOHNSON, III
                                  District Attorney General

                                  JOHN C. ZIMMERMANN
                                  Assistant District Attorney General
                                  Nashville, TN

OPINION

AFFIRMED                                                    BIRCH, J.

During a wide-ranging investigation, law enforcement officers located and seized several items of property thought to be used in the conduct of an illegal drug enterprise. Criminal charges followed the several seizures, and Page Stuart, the appellant, pleaded guilty to offenses involving delivery and conspiracy to deliver large quantities of marijuana. The State thereafter instituted administrative proceedings under Tenn. Code Ann. § 53-11-201 et seq. (1991 & Supp. 1992) for the forfeiture of the property seized. Although Stuart challenged the forfeiture of some of the property,[1] he was not successful, and both the Chancery Court and the Court of Appeals upheld the forfeiture.

We granted Stuart's application for review under Rule 11, Tenn. R. App. P., in order to address the following issues of constitutional significance:

1.      Whether Tennessee's forfeiture statutes impose "punishment" within the meaning of the double jeopardy clauses of the United States and Tennessee Constitutions, such that forfeiture cannot follow a

_____

[1]Stuart claimed the following property:
$120,406 in U.S. currency, seized 9/8/92;
$159,227 in U.S. currency, seized 9/9/92;
one 1993 GMC truck, seized twice, 11/9/92 and 5/21/93;
$3,000 in U.S. currency, seized 4/12/93;
$35,260 in U.S. currency, a quantity of burned U.S. currency (for which the police received a cashier's check for $8,820), and 100 boxes of sports cards, seized 5/21/93;
$315,000 in U.S. currency, seized 6/3/93; and
two cashier's checks for $3,000 and $5,000, seized 6/18/93.

2

conviction for the offenses involving the forfeited property.[2]

2. Whether the forfeiture here imposed constitutes an "excessive fine" as prohibited by the Eighth Amendment to the United States Constitution and Article I, § 16 of the Tennessee Constitution.

Because we find that the Tennessee legislature clearly intended that forfeiture be a civil, in rem proceeding, we hold that forfeiture under Tenn. Code Ann. § 53-11-201 et seq. does not impose "punishment" for the purposes of the double jeopardy clauses of the Tennessee and United States Constitutions. Further, we hold that the forfeiture of Stuart's property did not violate the excessive fines clauses of the Tennessee and United States Constitutions.

I

From June 1987 to March 1993, Stuart and several accomplices were trafficking in large quantities of marijuana. Stuart was indicted in April 1993 for his role in this conspiracy.

_____

[2]Stuart asserts that the forfeiture violates double jeopardy, even though the final order of forfeiture was entered April 29, 1994, prior to his guilty pleas entered on June 15, 1994. As a practical matter, the sequence of the State's actions against Stuart and his property dictates that the conviction is the punishment he should assert places him in double jeopardy. Because in any event we find that the forfeiture is not punishment for double jeopardy purposes, we disregard this irregularity.

On June 15, 1994, he pleaded guilty to three felony offenses: conspiracy to deliver over 70 pounds of marijuana,[3] conspiracy to deliver over 700 pounds of marijuana,[4] and delivery of over 70 pounds of marijuana.[5] The third offense was based upon a March 1993 delivery of approximately 140 pounds of marijuana.

In the course of the investigation, law enforcement officers conducted numerous searches of various homes and properties, including some owned by Stuart. The searches, conducted from September 1992 to June 1993, resulted in the seizure of vehicles, other personal property, and over $840,000 in United States currency. The currency claimed by Stuart was discovered in various locations: on Stuart's person, in his truck, in various hiding places inside his home, within a hidden compartment in the shed behind his girlfriend's house, and buried in a North Carolina cemetery, next to the graves of relatives.

Pursuant to the administrative procedures in Tenn. Code Ann. § 53-11-201 (Supp. 1992), the State initiated proceedings in the Tennessee Department of Safety for the forfeiture of the property seized. Stuart did not present any evidence during these proceedings. In the initial order filed December 22, 1993, the administrative law judge made the following findings:

---

[3] Tenn. Code Ann. § 39-6-417(c)(M) (Supp. 1988) (repealed 1989).

[4] Tenn. Code Ann. § 39-17-417(j)(13).

[5] Tenn. Code Ann. § 39-17-417(i)(13).

> [I]t is concluded that all of the money claimed by Page Stuart, along with the sports cards[6] claimed by him, were by a preponderance of the evidence drug proceeds, or purchased with drug proceeds, or purchased with money so commingled with drug proceeds as to make it for all intents and purposes one and the same and to render it all subject to forfeiture under the law, absent credible rebuttal evidence, which was not forthcoming. . . .
>
> . . .
>
> Finally, it is concluded that the preponderance of the evidence presented in this case is that the 1993 GMC truck at issue was used to facilitate the March, 1993, transaction involving the sale of 140-142 pounds of marijuana. . . . The use of the truck to go to San Diego to set up the drug deal that led to over 140 pounds of marijuana being taken to Tennessee clearly "facilitated" this transaction or sale.

The administrative law judge also found that Stuart made a lump sum payment of $20,000 for the 1993 GMC truck and received a rebate of $2,139.37. With respect to Stuart's yearly legitimate income, evidence showed that he earned $31,568.07 in gross wages in 1988; $27,372 in 1989; $25,800 in 1990; $25,930 in 1991; $5,943 in wages and pension income in 1992; and $2,640 in pension income in 1993. In addition, he withdrew $11,000 from his credit union account in 1991 and $52,858.95 in 1992. Yet, his documented expenses, including the seized currency for which he filed claims, were $789,975.09 in 1992 and $413,930 in 1993. These expenses

---

[6]The "sports cards" consisted of an extensive collection of baseball, football, and basketball cards.

5

exceeded his 1992 and 1993 legitimate income by over 1.1 million dollars.

In the final order dated April 29, 1994, the Commissioner of the Tennessee Department of Safety adopted the administrative law judge's findings of fact and conclusions of law. The chancery court considered Stuart's petition for review and affirmed the order of the Commissioner. The Court of Appeals affirmed the chancery court judgment. Because the constitutional issues in this case are solely questions of law, our review is de novo. State v. Davis, 940 S.W.2d 558, 561 (Tenn. 1997).

II

The double jeopardy clause of the Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb . . . ." Article 1, § 10 of the Tennessee Constitution provides that "no person shall, for the same offence, be twice put in jeopardy of life or limb." As we have stated often and most recently in State v. Denton, 938 S.W.2d 373, 378 (Tenn. 1996), three fundamental principles underlie double jeopardy: (1) protection against a second prosecution after an acquittal; (2) protection against a second prosecution after conviction; and (3) protection against multiple punishments for the same offense. Stuart asserts that forfeiture subsequent to conviction constitutes

6

a second punishment imposed for the same offense--a violation of the third double jeopardy protection enunciated in Denton.

In United States v. Ursery, 518 U.S. 267, 116 S. Ct. 2135, 2138, 135 L. Ed.2d 549, 557 (1996), the United States Supreme Court held that civil forfeiture generally does not constitute punishment for the purposes of the federal constitution's double jeopardy clause. The Court further found that the federal forfeiture provisions at issue were civil rather than criminal in nature, thus, not punishment for double jeopardy purposes. Id. at __, 116 S.Ct. at 2149, 135 L. Ed.2d at 571. The appellant asks this Court to reject the reasoning of Ursery and to find forfeitures under the Tennessee forfeiture statute criminal in nature.

Once it is determined that multiple punishments have been imposed upon a defendant, the Tennessee Constitution does indeed provide a greater measure of protection against double jeopardy than does the United States Constitution. See Denton, 938 S.W.2d at 381-82. However, in addressing the initial question of what constitutes punishment, this Court has previously followed a federal standard. See State v. Conley, 639 S.W.2d 435, 436-37 (Tenn. 1982) (revocation of driver's license is not punishment); Metropolitan Gov't of Nashville and Davidson County v. Miles, 524 S.W.2d 656, 660 (Tenn. 1975) (imposition of fine for violation of city ordinance is punishment). Furthermore, the test delineated in Ursery is consistent with the standard previously utilized by this Court:

7

> [N]ot every deprivation visited upon one who violates the state's laws is to be considered "punishment" for purposes of applying the double jeopardy clause. Thus, it is recognized . . . that the double jeopardy clause did not prevent a second action that is "remedial in nature" and not intended to have the effect of inflicting "punishment" upon the individual in order to vindicate public justice.

Conley, 639 S.W.2d at 436; see also Miles, 524 S.W.2d at 660.

Accordingly, we will rely on the two-part Ursery test in order to determine whether forfeiture under Tennessee law constitutes punishment for the purpose of double jeopardy.[7] Under the first prong, we must determine whether the legislature intended forfeiture proceedings to be criminal or civil. Under the second prong, we must consider whether "the clearest proof" demonstrates that, despite legislative intent, the forfeiture proceedings are so punitive in fact that they cannot be legitimately viewed as civil in nature. Ursery, 518 U.S. at __, 116 S. Ct. at 2147, 135 L. Ed.2d at 568-69.

Considering the first prong of the Ursery test in the context of Tennessee's forfeiture statutes, it is clear that the Tennessee legislature intended these forfeiture proceedings to be civil rather than criminal. Three reasons support this conclusion.

_____

[7]We also note that the numerous jurisdictions previously addressing this issue invariably follow Ursery. See, e.g., Wilhite v. State, 689 So.2d 221, 224 (Ala. Crim. App. 1996); Sims v. State, 930 S.W.2d 381, 382-83 (Ark. 1996); State v. McGough, 924 P.2d 633, 635 (Idaho Ct. App. 1996); State v. Predka, 555 N.W.2d 202, 212 (Iowa 1996).

First, forfeiture under Tennessee law is an action <u>in rem</u>. This Court has regarded forfeiture under the Tennessee statutes as an action <u>in rem</u> for a considerable length of time. <u>See</u> <u>Fuqua v. Armour</u>, 543 S.W.2d 64, 68 (Tenn. 1976) ("A forfeiture proceeding such as this is an action <u>in rem</u> and jurisdiction of the Court depends upon its actual or constructive custody of the property being forfeited, ordinarily acquired by virtue of its previous seizure."). Moreover, Tenn. Code Ann. § 53-11-451(b) (1991) states that property may be seized "upon process issued by any circuit or criminal court having jurisdiction <u>over the property</u>." (emphasis added). Thus, it is the property itself which is targeted, not the owner of the property. In contrast to the <u>in personam</u> nature of criminal actions, <u>in rem</u> actions are traditionally viewed as civil proceedings, with jurisdiction dependent on the seizure of a physical object. <u>Ursery</u>, 518 U.S. at __, 116 S. Ct. at 2147, 135 L. Ed.2d at 568 (quoting <u>United States v. One Assortment of 89 Firearms</u>, 465 U.S. 354, 363, 104 S. Ct. 1099, 1105, 79 L. Ed.2d 361, 369 (1984)).

Second, the procedures delineated in the relevant statutes support the conclusion that the Tennessee legislature intended forfeiture proceedings to be civil rather than criminal actions. The most significant procedural indication of such an intent is the allocation of the burden of proof.[8] The State has a

_____

[8]Other procedural provisions further demonstrate that the forfeiture statutes are civil in nature. First, forfeiture proceedings require neither scienter nor actual notice to the affected person. The Department of Safety needs only to make a "reasonable effort" to notify the property owner "by furnishing all parties known to have an interest in the conveyance with a copy of the receipt." Tenn. Code Ann. § 53-11-201(a)(1)(C) (Supp. 1992).

less onerous burden--that of proving only by a preponderance of the evidence that the property is subject to forfeiture. Tenn. Code Ann. § 53-11-201(d)(2) (Supp. 1992). This is to be contrasted with the State's burden in criminal proceedings--proof beyond a reasonable doubt.

The third supporting reason is the explicit language of Tenn. Code Ann. § 53-11-403 (1991), which provides:

> Any penalty imposed for violation of parts 3 and 4 of this chapter or [title 39, chapter 17, part 4] is <u>in addition to, not in lieu of</u>, any civil or administrative penalty or sanction otherwise authorized by law.

(emphasis added). Admittedly, part 4 of chapter 11 is titled "Criminal Penalties and Enforcement," and Tennessee's forfeiture statutes are found in parts 2 and 4 of chapter 11. However, the criminal penalties to which this title refers are separate and distinct from forfeiture. Criminal penalties are imposed by part 4 for various criminal conduct, such as acquiring prescription drugs by fraud or dispensing prescription drugs in violation of part 3, "Regulations and Registrations." <u>See</u> Tenn. Code Ann. §§ 53-11-401 and -402 (1991). Tennessee Code Annotated § 53-11-403

_____

Indeed, the property may be subject to forfeiture even if no claim is ever filed and the State never shows a connection between the property and a particular person. <u>Ursery</u>, 518 U.S. at __, 116 S. Ct. at 2149, 135 L. Ed.2d at 570; Tenn. Code Ann. § 53-11-203 (1991). Moreover, when a motor vehicle is seized, the law enforcement agency may pursue the forfeiture proceeding through "either an administrative agency or through a court having <u>civil</u> jurisdiction . . . ." Tenn. Code Ann. § 53-11-201(k)(Supp. 1992) (emphasis added).

10

explains that these penalties are _in addition_ to administrative penalties such as forfeiture. Thus, the legislature's intent to make forfeiture proceedings civil is abundantly clear.

The second prong of the _Ursery_ test requires us to determine whether Tennessee's forfeiture proceedings are so punitive in form and effect as to overcome our legislature's intent and render the proceedings criminal. The forfeiture proceedings must be shown by the "clearest proof" to be punitive in order to overcome legislative intent. _Ursery_, 518 U.S. at __, 116 S. Ct. at 2148, 135 L. Ed.2d at 569. No such proof exists. We discern no substantive difference between Tennessee's forfeiture statutes and the federal statutes at issue in _Ursery_. Thus, the reasoning with respect to the punitive effect of the forfeiture statutes in _Ursery_ is fully applicable here.

While all forfeiture statutes no doubt have certain punitive aspects, they also serve important nonpunitive goals. First, requiring the forfeiture of property used to commit drug violations serves the remedial goal of encouraging property owners to make sure the property is not used for illegal purposes. Second, the forfeiture may also abate a nuisance. With respect to proceeds, the forfeiture serves the nonpunitive goal of ensuring that persons do not profit from their illegal acts. _Id._ at __, 116 S. Ct. at 2148-49, 135 L. Ed.2d at 569-70. Finally, while forfeitures may fairly be said to serve the purpose of deterrence, this fact does not transform forfeiture into a criminal penalty. Indeed, all civil penalties have some deterrent effect. If a

11

sanction must be solely remedial to avoid violating the double jeopardy clause, then no civil penalties would be beyond the scope of the Clause. <u>Hudson v. United States</u>, __ U.S. __, 118 S. Ct. 488, 495, 139 L. Ed.2d 450, 461 (1997).

Under the Supreme Court's two-part test in <u>Ursery</u>, then, we conclude that forfeiture under Tenn. Code Ann. § 53-11-201 <u>et seq.</u> is a civil <u>in rem</u> proceeding and does not constitute punishment for purposes of either the state or federal double jeopardy clause.

III

The second issue Stuart raises is whether the forfeiture of his currency, truck, and sports cards constitutes an excessive fine, in violation of the Tennessee and United States Constitutions. Article I, § 16 of the Tennessee Constitution and the Eighth Amendment to the United States Constitution both provide that excessive bail "shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." This Court has previously construed the cruel and unusual punishment clause of Article I, § 16 to be coextensive with its federal counterpart. <u>State v. Harris</u>, 844 S.W.2d 601, 603 (Tenn. 1992); <u>State v. Black</u>, 815 S.W.2d 166, 188-89 (Tenn. 1991). Accordingly, we will construe the excessive fines clause of Article I, § 16 in the same manner.

While forfeiture is not necessarily a criminal action for purposes of the double jeopardy clause, forfeiture is, at least in

12

part, a punitive measure.  As a result, the excessive fines clause applies even to civil in rem forfeitures of property.  Austin v. United States, 509 U.S. 602, 621-22, 113 S. Ct. 2801, 2812, 125 L. Ed.2d 488, 505-06 (1993).  However, neither the Austin Court nor any Tennessee court has established a test for determining what constitutes an excessive fine.  Thus, we must now define such a standard.

As a threshold matter, we find that the proceeds of illegal drug transactions are not subject to an excessive fines analysis under Austin.  The forfeiture of such proceeds is not punitive because the claimant was never legally entitled to them, in the same way that a bank robber is not entitled to the stolen money.  United States v. Tilley, 18 F.3d 295, 300 (5th Cir.), cert. denied, 513 U.S. 1015 (1994).  Thus, forfeiture of drug proceeds is purely remedial in nature.  United States v. Salinas, 65 F.3d 551, 554 (6th Cir. 1995); see also State v. Cole, 906 P.2d 925, 934-36 (Wash. 1995).[9]

In this regard, Austin is partially distinguishable from the instant case because the forfeited properties in Austin, a mobile home and auto body shop, were used in furtherance of drug transactions; they were not proceeds of drug transactions.  Austin, 509 U.S. at 604-05, 113 S. Ct. at 2803, 125 L. Ed.2d at 494.  In contrast, in the case under review the administrative law judge found that

---

[9]Most courts that have considered this issue have held that the forfeiture of proceeds is not punishment.  Cole, 906 P.2d at 935 n.10 (collecting cases).

> all of the money claimed by Page
> Stuart, along with the sports cards
> claimed by him, were by a
> preponderance of the evidence drug
> proceeds, or purchased with drug
> proceeds, or purchased with money so
> commingled with drug proceeds as to
> make it for all intents and purposes
> one and the same and to render it
> all subject to forfeiture . . . .

The definition of "proceeds" includes not only cash but also property secured with the proceeds of illegal activity. Salinas, 65 F.3d at 554. Therefore, the excessive fines clauses of both the United States and Tennessee Constitutions do not apply to the forfeiture of Stuart's currency and sports cards because the administrative law judge found them to either be proceeds or purchased with proceeds. Consequently, the truck, which the administrative law judge found to have been used to facilitate a drug transaction, is the only property subject to an excessive fines analysis.

Considering the forfeiture of Stuart's truck in the context of excessive fines, jurisdictions that have established an excessive fines test generally divide into two categories: those adopting the instrumentality test proposed by Justice Scalia in Austin,[10] and those adopting a multifactored hybrid of the instrumentality and proportionality tests.[11]   Under the

_____

[10]See United States v. Chandler, 36 F.3d 358, 365 (4th Cir. 1994), cert. denied, 514 U.S. 1082 115 S. Ct. 1792, 131 L. Ed.2d 721 (1995); In re King Properties, 635 A.2d 128, 133 (Pa. 1993).

[11]The majority of jurisdictions have adopted some form of the hybrid test.   See, e.g., Wojnar v. City of Tarpon Springs, 684 So.2d 197, 199 (Fla. Ct. App. 1996); Thorp v. State, 450 S.E.2d 416, 419-20 (Ga. 1994); People ex rel. Waller v. 1989 Ford F350

14

instrumentality test, the issue is not the monetary worth of the forfeited property; rather, the issue is how closely related the property is to the underlying offense. For example, a set of scales used to measure contraband is forfeitable whether made of the purest gold or the basest metal. Austin, 509 U.S. at 627-28, 113 S. Ct. at 2815, 25 L. Ed.2d at 509 (Scalia, J., concurring). A proportionality analysis, which stems from the United States Supreme Court's approach to the cruel and unusual punishment clause, essentially compares the value of the forfeited property with the gravity of the criminal conduct. United States v. 11869 Westshore Drive, 70 F.3d 923, 927 (6th Cir. 1995), cert. denied, __ U.S. __, 117 S. Ct. 57, 136 L. Ed.2d 20 (1996).

Various courts have expressed concern over the difficulty in applying both the instrumentality and the proportionality approaches. The proportionality approach makes the excessive fines analysis very fact-specific, thus providing less guidance and uniformity. See Wojnar, 684 So.2d at 201 (Altenbernd, J., concurring and dissenting). Yet, proportionality analysis is an effective mechanism for restraining the State, which has a strong pecuniary incentive to confiscate the most property--and the most valuable property--possible. See Thorp, 450 S.E.2d at 419.

Further, relying solely on the instrumentality test may not be fully consistent with the reasoning in Austin. The majority in Austin based the application of the excessive fines clause on

_____

Truck, 642 N.E.2d 460, 466 (Ill. 1994); State v. Harold, 671 N.E.2d 1078, 1082 (Ohio Ct. App. 1996).

15

the ground that the forfeiture served, at least in part, to punish the owner. Because the property owner is the person punished, it would be illogical not to consider the owner's culpability in determining whether the forfeiture is excessive. Additionally, "the very word 'excessive' plainly contemplates some comparison of the fine to the conduct sought to be punished in order to determine if the fine violates the Eighth Amendment." Id. at 418.

Finally, we note that Tennessee's forfeiture statutes embrace the proportionality approach. Under Tenn. Code Ann. § 53-11-451(a)(4)(C)(Supp. 1997), the simple possession of a small amount of drugs or drug paraphernalia cannot trigger a forfeiture action. Apparently, the legislature has determined that forfeiture would be disproportionate to those crimes.

Therefore, we conclude that any analysis under the excessive fines clause must include a proportionality test. Although the multifactored analysis is described in various ways, courts consistently utilize the following factors:

> (1) the harshness of the penalty compared with the gravity of the underlying offense;
>
> (2) the harshness of the penalty compared with the culpability of the claimant; and
>
> (3) the relationship between the property and the offense, including whether use of the property was (a) important to the success of the crime, (b) deliberate and planned or merely incidental and fortuitous, and (c) extensive in terms of time and spatial use.

16

E.g., 11869 Westshore Drive, 70 F.3d at 928; United States v. 6625 Zumirez Drive, 845 F. Supp. 725, 732 (C.D. Cal. 1994). No single factor is dispositive. Id.

In considering the gravity of the offense under the first factor, several general principles guide our analysis: (1) intentional conduct is more serious than negligent conduct; (2) completed crimes are more serious than attempted crimes; and (3) violent crimes are more serious than nonviolent crimes. Id. at 733. Here, the administrative law judge found that the truck had been used to further a high-volume drug transaction--unquestionably a grave offense. Further, the transaction was both intentional and complete. Finally, while drug violations are not per se violent crimes, it is worth noting that violence is often part of a high-volume drug trafficking enterprise.

When analyzing the culpability of the claimant under the second factor, there are also certain principles that guide our analysis: (1) the claimant acquitted of an offense is regarded as the least culpable; (2) the claimant convicted of an offense is the most culpable; and (3) the claimant never charged with an offense must be presumed innocent. See id. Here, Stuart was convicted for the underlying drug offenses. In fact, he pleaded guilty to three felony drug offenses and did not at any time contest the evidence against him during the forfeiture proceedings. Thus, in this regard Stuart falls into the "most culpable" category.

When determining the harshness of the penalty imposed under the first and second factors of the excessive fines analysis, courts should consider the monetary value of the property forfeited, particularly in light of the claimant's financial resources. A forfeiture is less likely to be excessive when the claimant has the financial ability to replace the property without undue hardship. Conversely, a forfeited vehicle may be worth little, but undue hardship may still result if the claimant's family cannot afford to replace it and has no other means of transportation.[12] Finally, the intangible value of the forfeited property should be considered. For example, real property, especially a home, has a higher intangible value than personal property. 6625 Zumirez Drive, 845 F. Supp. at 734.

In the instant case, Stuart purchased the truck in 1992 for approximately $18,000. The record does not reveal the truck's value at the time of forfeiture. With respect to financial resources, the administrative law judge found that Stuart's yearly legitimate income varied from approximately $26,000 to $59,000 from 1988 to 1992. In 1993, he earned only $2,640 from his pension. Meanwhile, evidence suggests that he was spending or hiding hundreds of thousands of dollars in both 1992 and 1993. Further, no evidence suggests that forfeiture of the truck will impose an extreme hardship on Stuart or any other member of his family. Based on the foregoing, we cannot say that the deprivation of one

---

[12]If the claimant's finances are not considered, proportionality analysis will generally permit the forfeiture of property from persons of lesser means, while prohibiting forfeiture from persons of greater means. Wojnar, 684 So.2d at 200 (Altenbernd, J., concurring and dissenting).

18

moderately expensive vehicle is a particularly harsh penalty.

In sum, because the offense was intentional, complete, potentially violent, and involved a major conspiracy to sell large quantities of marijuana, the offense is serious. Furthermore, Stuart, who pleaded guilty to the underlying offense, is unquestionably most culpable. In comparison, the penalty is not particularly harsh. This conclusion is buttressed by the fact that Stuart's expenditures exceeded his legitimate income by hundreds of thousands of dollars in the two years preceding his arrest. And while the record does not reveal the truck's value at the time of forfeiture, it is undoubtedly dwarfed by the value of the large quantities of marijuana Stuart has admitted to smuggling into the United States.

The third factor of the excessive fines analysis is the relationship between the property and the offense. Under this factor, we inquire whether the property was important to the success of the criminal activity. The administrative law judge found that the forfeited truck was used to facilitate a transaction involving 140 pounds of marijuana. Apparently, the truck was used as Stuart's transportation from Nashville, Tennessee, to San Diego, California, to arrange the transaction, not to actually transport the marijuana. Thus, the importance of the truck to the success of the transaction is minimal, in that any vehicle could have served this purpose. However, the use of the truck was clearly deliberate and planned. As to the extent of the use of the truck, there is proof only with respect to the one

transaction involving 140 pounds of marijuana.  While this is only a single event, Stuart drove the truck all the way from Nashville to San Diego to make the arrangements.  Clearly, a cross-country drive in the truck is extensive both in terms of time and "spatial use."

In conclusion, the factors weigh in favor of allowing the forfeiture of the 1993 GMC truck.  While the importance of the truck to the success of Stuart's drug transaction may be minimal, other facts strongly indicate that the forfeiture of the truck is not unconstitutionally excessive.  In light of the gravity of the offense, Stuart's culpability, the moderate effect of the forfeiture here imposed, and the deliberate and extensive use of the truck, the forfeiture does not violate the excessive fines clause of either the Tennessee or United States Constitution.

Accordingly, and for the reasons herein stated, the judgment of the Court of Appeals is affirmed.  Costs are taxed against the appellant, for which execution may issue if necessary.

_____
ADOLPHO A. BIRCH, JR., Justice

CONCUR:
Anderson, C.J.
Drowota, Reid, Holder, JJ.