IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 19, 2012 Session

## CHARLES A. HARMON, ET AL. v. JAMES J. J. JONES, ET AL.

**Appeal from the Criminal Court for Knox County**
**No. 95571      Mary Beth Leibowitz, Judge**

_____

**No. E2010-02500-COA-R3-CV-FILED-AUGUST 14, 2012**

_____

Property of the appellants was seized following a traffic stop. Requests for return of the property were denied by the Knox County Sheriff's Department. The appellants, who were not facing any criminal charges, filed an action in criminal court seeking the return of all the seized property. The Sheriff's Department subsequently filed drug forfeiture warrants and property receipts. The appellants argued that the Sheriff's Department was attempting to initiate Department of Safety jurisdiction in disregard of their earlier filing in criminal court. The criminal court dismissed the action, asserting lack of jurisdiction. The appellants appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., and D. MICHAEL SWINEY, JJ., joined.

Herbert S. Moncier, Knoxville, Tennessee, for the appellants, Charles A. Harmon, Fonda Gross, Charlana Harmon, Betty Cummings, Joshua Brown, Clyde E. McCarty, III, and Jeremy Bowling.

Charles F. Sterchi, III, Deputy Law Director, Knoxville, Tennessee, for the appellees, James J. J. Jones, in his Official Capacity as Knox County Sheriff, Knox County Sheriff's Department, and Knox County, Tennessee.

**OPINION**

**I. BACKGROUND**

On September 9, 2010, appellant Clyde E. McCarty, III, was operating a 1999 Chrysler Town and Country van belonging to, and with the permission of, appellant Charles A. Harmon. Appellants Fonda Gross, Charlana Harmon, Betty Cummings, Joshua Brown, and Jeremy Bowling were passengers in the van. A Knox County Sheriff's Deputy stopped the van on I-640 close to its intersection with Western Avenue because the driver was not wearing a seat belt. The Deputy ordered Mr. McCarty out of the van and took him to the rear of the vehicle to question him. Another Deputy was called due to the number of individuals found in the van. Mr. McCarty was placed in a cruiser, and the occupants of the van were removed, one by one, and questioned. The occupants of the van were handcuffed and sat along the edge of the interstate for approximately an hour and a half. A drug dog was called, but it did not alert. The Deputies then physically searched the van. The appellants eventually were transported by paddy wagon to a nearby Kroger's parking lot and released. Mr. McCarty was issued a warning citation for driving without a seatbelt.

The van was towed and seized. The personal belongings of the appellants remaining in the van likewise were seized. The appellants were not provided any receipts for the items taken.

The case summary prepared by the deputy, Officer J. Doran,[1] provided as follows:

On Thursday, September 9th, 2010 at approximately 1804 hours, Officer observed the defendant, Clyde McCarty III, traveling 640 West at the Pleasant Ridge overpass operating a 1999 Chrysler Town & Country without his seat belt securely fastened. Officer initiated a traffic stop on the defendant, and stopped just east of the Western Avenue exit. Upon approach of the vehicle, officer observed six defendants in the vehicle. Officer requested assistance from another officer due to the amount of people inside the vehicle. Officer asked the defendant for his license, registration, and proof of insurance. When the defendant handed officer documents for the vehicle, the defendant was acting in a nervous manner, with his hands shaking while handing officer the documents. Defendant Clyde McCarty III stated to the officer that the vehicle did not belong to him, nor was the owner of the vehicle present in the vehicle. Officer asked the defendant to step out of the vehicle for officer safety.

When the defendant met officer at the back of the vehicle, defendant informed officer that they were on their way to West Town Mall in Knoxville, TN. Due to defendant Clyde McCarty III's statement, officer asked defendant Betty Cummings to step out of the vehicle for officer safety, who was seated in the

---

[1]The summary was dated September 13, 2010.

-2-

front passenger seat. The story of Betty Cummings did not match the one of defendant Clyde McCarty III. Each of the defendant[]s left inside the vehicle were asked to step out, one-by-one, and officer was given several statements that did not match the others told to officer. Officer Mitchell, the assisting officer, arrived on scene and asked defendant, Clyde McCarty III, operator of the vehicle at the time of the stop, for consent to search the vehicle. Defendant Clyde McCarty III complied with officer's request, granting officer[]s consent to search the vehicle.

During the search of the vehicle, officer[]s found multiple documents from Florida pain clinics, two empty pill bottles filled from Tampa, Florida, one pill bottle with no label containing nineteen Hydrocodone pills, one half of an unidentified pill wrapped in cellophane, one cut straw known for snorting narcotics, a GPS containing directions to several south Florida locations, one CD of an MRI, two notebooks with hand written addresses to several pa[in] clinics and pharmacies along with hand written prices for several kinds of narcotics, an unknown amount of U.S. Currency, one bag packed in the back of the van for each person in the vehicle, three purses for the three female defendant[]s in the vehicle, and one cooler filled with ice and drinks. Only two of the defendant[]s were in possession [of] large amounts of U.S. Currency in the vehicle. The defendants were detained and read their Miranda Rights. . . .

During the search of defendant, Clyde E. McCarty III's wallet, located inside the vehicle, officers found one appointment card to a Coast to Coast Healthcare Management located in Deerfield Beach, Florida, and a piece of paper from American Civil Liberties Union stating step-by-step instructions on how to deal with encounters with a police officer that had a hand-written address on the backside to a Tampa Bay Wellness Center in Tampa, Florida.

* * *

Case summary information regarding appellant Charlana H. Woolley noted as follows:

During a search of the defendant, Charlana H. Woolley's purse, located inside the vehicle w[ere] two appointment card[s] to Atlanta Medical Group in Cartersville, Georgia, two appointment cards to Integrity Behavioral Medicine (Suboxone Treatment Specialist) in Knoxville, Tennessee, one Watson Pharmacy business card located in Jacksonville, Florida, one appointment card to the Community Health Clinic in LaFollette, Tennessee, one business card

-3-

to Ricardo Padilla, Director of Marketing for Morrison's RX in Sunrise, Florida, one business card to a Wendell T. Locke, Pharmacy Manager of Allz Well Pharmacy in Oakland Park, Florida, one blank appointment card to Coast to Coast Healthcare Management in Deerfield Beach, Florida, two note books containing documentation of narcotic quantities and prices that also contained several names and addresses to several pain clinics in south Florida, one prescription from Atlanta Medical Group in Atlanta, Georgia, one receipt from Terry's pharmacy in LaFollette, Tennessee, along with $3,533.00 in U.S. Currency.

It is this officer's belief through his training and experience that the $3,533.00 in U.S. Currency found in defendant Charlana H. Woolley's purse at the time of the traffic stop, is proceeds from illegal narcotic transactions due to the overwhelming evidence from inside the vehicle showing the defendant's traveling to south Florida to visit pain clinics along with the specific documentation from the defendant's purse.

The case summary information regarding appellant Fonda F. Gross indicated the following:

During a search of the defendant, Fonda F. Gross's purse, located inside the vehicle was a blank appointment card from POM MRI Center of Boca, located in Boca Raton, Florida and a business card for a Wendell T. Locke, Pharmacy Manager of the Allz Well Pharmacy located in Oakland Park, Florida, along with $1,495.00 in U.S. Currency.

It is this officer's belief through his training and experience that the $1,495.00 in U.S. Currency found in defendant Fonda F. Gross's purse at the time of the traffic stop, is proceeds from illegal narcotic transactions due to the overwhelming evidence from inside the vehicle showing the defendant's traveling to south Florida to visit pain clinics along with the specific documentation from the defendant's purse from POM MRI Center of Boca in Boca Raton, Florida and Allz Well Pharmacy in Oakland Park, Florida.

The day following the stop, the appellants appeared at the Knox County Sheriff's Department ("the KCSD") to request the return of their property. The requests were denied.

On September 13, the appellants filed this action in criminal court seeking the return of all the seized property pursuant to Rule 41(g) of the Tennessee Rules of Criminal

Procedure and Tennessee Code Annotated section 53-11-451(d).[2] The appellants asserted that they had not violated any law that justified the KCSD seizing their property under the Tennessee Drug Control Act, Tennessee Code Annotated section 39-17-401, et seq. or the forfeiture provision of Tennessee Code Annotated section 53-11-451 (Tenn. Code Ann. § 53-11-451(i) states: "Confiscation proceedings under part 3 of this chapter and this part, or title 39, chapter 17, part 4, shall be conducted in accordance with part 2 of this chapter."). They contended Tennessee Code Annotated section 40-33-201, a part entitled "Forfeiture Procedures Generally," specifically provides that property subject to forfeiture under Tennessee Code Annotated section 53-11-451 "shall be seized and forfeited in accordance with the procedure set out in this part." Tennessee Code Annotated section 53-11-201 and Tennessee Code Annotated section 40-33-203 essentially state the same procedure. Section 53-11-201 relates to "seizure of any narcotic drugs . . . or any vehicle . . . or other property subject to forfeiture . . .," whereas section 40-33-201 addresses "[a]ll personal property, including conveyances, subject to forfeiture under the provisions of . . . § 53-11-451 . . . ." Counsel for the appellants asserted that the matter was not a drug seizure case because the appellants had not been given receipts for the items taken as required by the applicable statute.[3] It was argued that jurisdiction was not with the Department of Safety because the

---

[2]The statute concerns narcotic drugs and drug control. Section 53-11-451(d) provides that

Property taken or detained under this section shall not be subject to replevin, but is deemed to be in the custody of the . . . sheriff . . . subject only to the orders and decrees of the circuit or criminal court. . . .

[3]Tennessee Code Annotated section 53-11-201(a)(1)(A) provides that

[i]n all cases of seizure of any narcotic drugs . . . or any vehicle . . . or other property subject to forfeiture under this chapter, the officer or other person making the seizure shall deliver a receipt to the person, if any, found in possession of the property or conveyance.

(B) The receipt shall state a general description of the seized property or conveyance, the reasons for the seizure, the procedure by which recovery of the property or conveyance may be sought, including the time period in which a claim for recovery must be presented, and the consequences of failing to file within the time period.

Tennessee Code Annotated section 40-33-203 provides that

(a) Upon effecting a seizure, the seizing officer shall prepare a receipt titled a "Notice of Seizure." . . .

* * *

(c) Upon the seizure of any personal property subject to forfeiture pursuant to § 40-33-201,

(continued...)

KCSD had not properly initiated it.

Some of the personal property was returned, but the KCSD refused to give back the money, other personal property, and the van. The KCSD filed three drug forfeiture warrants and six non-drug forfeiture act property receipts. Counsel for the KCSD related that receipts for the seized items had been sent to the appellants by certified mail. He asserted that the KCSD properly obtained the forfeiture warrants within five working days from the date of the seizure. *See* Tenn. Code Ann. § 40-33-204. Counsel argued that as a result of the forfeiture warrants being signed by a magistrate, jurisdiction of the matter had been assumed by the Department of Safety.

According to the appellants, the applications for the forfeiture warrants were made on September 13, at approximately 10:30 p.m., whereas the appellants' complaints for return of property had been filed and served on the KCSD at approximately 9:30 a.m. on that same day. The appellants argued that the KCSD was attempting belatedly to initiate Department of Safety jurisdiction by obtaining forfeiture warrants for some of the property and creating receipts for the non-forfeitable property. The appellants asserted that they had instituted the authority of the trial court pursuant to Rule 41(g)[4] of the Tennessee Rules of Criminal

---

[3](...continued)
the seizing officer shall provide the person found in possession of the property, if known, a receipt titled a "Notice of Seizure." The notice of seizure shall contain the following:

(1) A general description of the property seized and, if the property is money, the amount seized;

(2) The date the property was seized and the date the notice of seizure was given to the person in possession of the seized property;

(3) The vehicle identification number (VIN) if the property seized is a motor vehicle;

(4) The reason the seizing officer believes the property is subject to seizure and forfeiture;

(5) The procedure by which recovery of the property may be sought, including any time periods during which a claim for recovery must be submitted; and

(6) The consequences that will attach if no claim for recovery is filed within the applicable time period.

The statutes do not address a time requirement in regard to the receipt.

[4](g) Motion for Return or Suppression of Property. – A person aggrieved by an unlawful or invalid search or seizure may move the court pursuant to Rule 12(b) to suppress any evidence obtained in the unlawful search or seizure. If property was unlawfully seized, the aggrieved person may move for the return
(continued...)

Procedure before the KCSD chose the administrative route. They argued that the doctrine of former case pending applied.

Subsequently, the appellants filed an amended petition for return of property by replevin,[5] contending that as of September 22, they still had not received mailings represented by the KCSD counsel to the trial court on September 15; that the applications for forfeiture warrants to the magistrate, made under oath, described the appellants as "Defendants;"[6] and that the applications for forfeiture warrants established a full arrest of the appellants prior to the seizures that invoked criminal procedures. They argued that the custodial arrest established jurisdiction of the trial court pursuant to Rule 41(g) of the Tennessee Rules of Criminal Procedure. The appellants further asserted that the property listed on the receipts created on September 15, 2010, was not contraband. They contended that the six receipts did not state why the property was seized or why the KCSD continued to hold the property. Additionally, the appellants pleaded that the trial court had jurisdiction to order the return of the property not subject to the Drug Forfeiture Act regardless of whether or not the trial court had jurisdiction over the property subject to the forfeiture warrants.

Counsel for the KCSD responded by observing that the appellants were arguing "that by coming to this court within that five day period [to obtain forfeiture warrants] . . . in essence, trumps the forfeiture statute, and I don't think the legislature envisioned that we would have a race to the court house to obtain jurisdiction over the property." The KCSD argued that exclusive jurisdiction rested with the Department of Safety.

The appellants then asserted that Tennessee Code Annotated section 39-11-701 et seq provided the trial court jurisdiction over seizures of property in both criminal prosecutions and non-criminal prosecutions. They argued that section 39-11-717 provides that the judicial

_____

[4](...continued)
of the property. The motion shall be granted – except as to the return of contraband – if the evidence in support of the motion shows that:

> (1) the search or seizure was made illegally without a search warrant or illegally with an invalid search warrant, or in any other way in violation of the constitutional protection against unreasonable searches and seizures .
> . . .

[5]Tennessee Code Annotated section 53-11-451(d) specifically states "[p]roperty taken or detained under this section shall not be subject to replevin. . . ."

[6]The appellants were not charged.

-7-

forfeiture statute is "remedial and shall be liberally construed to effect its purpose." The KCSD responded that the appellants' reliance on Part 7 of Chapter 11 of Title 39 was faulty because that authority deals with forfeiture of criminal proceeds. KCSD further noted that

> those items that are not the subject of forfeiture action that have not been returned . . . are evidentiary in nature and the subject of a pending criminal investigation involving the illegal resale of narcotic prescriptions originally obtained in Florida . . . .

The KCSD again asserted that "the legislature has vested the Commissioner of Safety with the exclusive jurisdiction to initially determine whether property seized incident to a violation of the Drug Control Act should be forfeited or returned to the lawful claimant." *See State v. Moses*, 584 S.W.2d 825, 827 (Tenn. Crim. App. 1979). The appellants responded that the KCSD's reliance on *State v. Moses* was misplaced because the statutes it construed were repealed, making *Moses* "overruled by legislation." The appellants contended that Tennessee Code Annotated section 40-33-201 established that the legislature did not intend to limit the jurisdiction of a court to return property as the statute in *Moses* had done. The appellants also noted that Rule 41(g) of the Tennessee Rules of Criminal Procedure was adopted after *Moses*.

On November 6, 2010, the trial court dismissed the petition. The court held as follows:

> The issue in this matter is whether this court has the jurisdiction to hear a replevin action. Both sides have made legal arguments, but no proof has been presented to the court. The Petitioners argue that the court has jurisdiction to hear the matter, and the Respondents argue that this court lacks such jurisdiction. . . . [T]his court determines that it lacks jurisdiction to hear the matter. The Petitioner's Amended Petition for Return of Property by Replevin is denied.

* * *

In December 2010, the appellants moved to alter and amend or for a new trial. Among other motions filed by the appellants, in April 2011, they moved to supplement their petition to allege their efforts to obtain, under protest, an administrative hearing for the return of their property. The appellants filed a letter of Chief Administrative Law Judge Thomas Stovall of the Administrative Procedures Division emailed on March 25, 2011. The appellants asserted that the letter established that the Commissioner of Safety had never perfected administrative jurisdiction as required by Tennessee Code Annotated section 40-

33-207 by placing the appellants' claim on the docket and thereby failed to perfect or maintain any administrative jurisdiction the Department may have had available.[7]

On May 26, 2011, the trial court entered a final order that provided, in relevant part, as follows:

> Petitioners complained that the court accepted as fact that the seizure of the property in question was pursuant to the Drug Forfeiture Act. Actually as pointed out previously, no underlying evidence was presented by either side. The burden in this case is on the petitioner[s]. The court can take note of argument, all items seized by the authorities, and use its common sense to recognize that these items were seized in an action with regard to drug forfeitures. These are clearly Department of Safety issues. The motion to rehear or amend is therefore denied. The motion to file a supplemental complaint is also denied as is the motion to make the Commissioner of Safety a party. This court is without jurisdiction. *McWhorter v. Selby*, 2009 WL 375438 is unrelated to the Drug Forfeiture Act provisions.
>
> * * *
>
> This court stands on its previous ruling of November 8, 2010, and incorporates its findings in this order. In the absence of jurisdiction and other stated reasons, all claims of the petitioner[s] are hereby respectfully dismissed.

The appellants filed a timely appeal.


## II. ISSUES

The issues raised by the appellants are restated as follows:

1. Whether the trial court erred by not considering each of appellants' claims in ruling on appellees' motion to dismiss.

2. Whether Rule 41(g) of the Tennessee Rules of Criminal Procedure provided the trial court with subject matter jurisdiction to order return of the appellants' property where unlawfully or unconstitutionally seized.

---

[7]The underlying forfeiture proceeding has since been dismissed by the Department of Safety. The seized property at issue was ordered returned to the appellants.

3. Whether *State v. Moses*, relied upon by the trial court, is distinguishable on its facts and the statute in *Moses* superseded by Rule 41(g) and Tennessee Code Annotated section 39-11-201, et seq.

4. Whether the doctrine of former case pending prevented the KCSD from attempting to initiate administrative proceedings to divest the trial court of its prior jurisdiction.

5. Whether the forfeiture warrants were obtained by fraud and did not initiate administrative jurisdiction with the Tennessee Department of Safety.

6. Whether the trial court erred by holding the seizures were "Drug Forfeiture Related" where the seizing officer, seizing agency, and Tennessee Department of Safety did not comply with the requirements of the drug forfeiture statute.


## III.  STANDARD OF REVIEW

We review this case pursuant to Rule 12.02(1) of the Tennessee Rules of Civil Procedure as a motion to dismiss for lack of subject matter jurisdiction.  As noted in *Phillips v. Tennessee Department of Revenue*, No. E2020-01839-COA-R3-CV, 2011 WL 3209153 (Tenn. Ct. App. July 28, 2011):

> The concept of subject matter jurisdiction involves a court's lawful authority to adjudicate a controversy brought before it.  Subject matter jurisdiction involves the nature of the cause of action and the relief sought and can only be conferred on a court by constitutional or legislative act.  Since a determination of whether subject matter jurisdiction exists is a question of law, our standard of review is de novo, without a presumption of correctness.

*Id.*, at *1.


## IV.  DISCUSSION

### A.

In *Stuart v. State Department of Safety*, 963 S.W.2d 28 (Tenn. 1998), the Tennessee Supreme Court held that "the Tennessee legislature clearly intended that forfeiture be a civil, in rem proceeding."  *Id.* at 30.  In *State v. Blackmon*, 984 S.W.2d 589 (Tenn. 1998), the

Tennessee Supreme Court stated "that forfeiture under Tennessee law is an action in rem, which is traditionally viewed as a civil proceeding," and that "the legislature intended forfeiture to be a civil, in rem proceeding . . . ." *Id.* at 592 (citing *Stuart*).

In *Stuart*, the Court provided as follows:

[F]orfeiture under Tennessee law is an action in rem. This Court has regarded forfeiture under the Tennessee statutes as an action in rem for a considerable length of time. . . . [I]t is the property itself which is targeted, not the owner of the property. In contrast to the in personam nature of criminal actions, in rem actions are traditionally viewed as civil proceedings, with jurisdiction dependent on the seizure of a physical object.

963 S.W.2d at 33 (citations omitted). The Court further noted:

. . . [T]he procedures delineated in the relevant statutes support the conclusion that the Tennessee legislature intended forfeiture proceedings to be civil rather than criminal actions. The most significant procedural indication of such an intent is the allocation of the burden of proof. The State has a less onerous burden – that of proving only by a preponderance of the evidence that the property is subject to forfeiture. Tenn. Code Ann. § 53-11-201(d)(2) (Supp. 1992). This is to be contrasted with the State's burden in criminal proceedings – proof beyond a reasonable doubt.

*Id.*

As noted previously, the trial court stated that it

can take note of argument, all items seized by the authorities, and use its common sense to recognize that these items were seized in an action with regard to drug forfeitures. These are clearly Department of Safety issues. . . .

Counsel for the appellants acknowledged that the proceedings were not about the traffic stop or the detainment of the appellants but concerned the property, asserting in a hearing: "If they'll return the property today . . . then that resolves this matter . . . ." Upon our de novo review of the record, we find the trial court properly ruled that it lacked jurisdiction to consider the arguments raised by the appellants because this is a civil matter under the jurisdiction of the Department of Safety. Tennessee Code Annotated section 53-11-451(i) requires that confiscation proceedings under that part of the chapter be in accordance with

-11-

part 2 (Tenn. Code Ann. § 53-11-201, et seq.). Tennessee Code Annotated section 53-11-201 refers to the responsibilities and duties of the Department of Safety, the Commissioner of General Services, and the Commissioner of Safety, among others. Tennessee Code Annotated section 53-11-204 provides that the proceeds of all seizures made by a state agency pursuant to the chapter shall be transmitted to the state treasurer and deposited in the state treasury. The provisions of Tennessee Code Annotated section 53-11-201, et seq. are civil, not criminal, in nature and are not to be addressed in a criminal forum.

Tennessee Code Annotated section 40-33-201, et seq., was enacted by Chapter 925 of the Public Acts of 1994 at section 1. Section 3 of that Public Act states:

> The provisions of Tennessee Code Annotated, Title 40, Chapter 33, Part 2, shall govern the procedure for seizing and forfeiting personal property subject to forfeiture under any of the provisions of law specified in Section 40-33-201. Any existing forfeiture procedure governing such property, or part thereof, that differs from the procedure set out in Tennessee Code Annotated, Title 40, Chapter 33, Part 2, is, to the extent of such difference, repealed.

At Section 2 of the same Public Act, Tennessee Code Annotated section 53-11-451 was amended. Thus, the legislature did not repeal Tennessee Code Annotated section 53-11-451 by the enactment of Tennessee Code Annotated section 40-33-201, et seq. Additionally, Tennessee Code Annotated section 53-11-451 was amended as recently as June 11, 2010 (Public Acts of 2010, Chapter 1040). Furthermore, Tennessee Department of Safety Administrative Rules 1340-2-2-05, .06 and .13 state that among the authority for those rules is Tennessee Code Annotated section 53-11-201, et seq.

As to other motions and pleadings raised by the appellants, we find that the trial court properly denied consideration because it lacked jurisdiction.[8]

**B.**

Rule 41(g) of the Tennessee Rules of Criminal Procedure provides, in pertinent part:

> Motion for Return or Suppression of Property. – A person aggrieved by an unlawful or invalid search or seizure may move the court pursuant to Rule 12(b) to suppress any evidence obtained in the unlawful search or seizure. If property was unlawfully seized, the aggrieved person may move for the return

---

[8]As the trial court lacked jurisdiction, the doctrine of former case pending is inapplicable.

of the property. The motion shall be granted – except as to the return of contraband – if the evidence in support of the motion shows that:

(1) the search or seizure was made illegally without a search warrant or illegally with an invalid search warrant, or in any other way in violation of the constitutional protection against unreasonable searches and seizures;

(2) a search warrant was relied on, but the search warrant or supporting affidavit is legally insufficient on its face and hence invalid;

(3) the search warrant relied on was issued on evidence consisting in material part of willful or reckless misrepresentations of the applicant to the issuing magistrate, resulting in a fraudulent procurement;

(4) the search warrant does not describe the property seized, and the seized property is not of such a character as to be subject to lawful seizure without a warrant;

(5) the magistrate . . . .

(6) the serving officer – where possible – did not leave a copy of the warrant with the person or persons on whom the search warrant was served.

Rule 41 essentially addresses search warrants – not the situation presented in this case. Also, Rule 12(b) of the Tennessee Rules of Criminal Procedure, to which Rule 41(g) refers, lists the motions that *may be* made before trial (Rule 12(b)(1)) and the motions that *must be* made before trial (Rule 12(b)(2)). None of the motions listed in the Rule address the issues in the case at bar. Further, as noted by the trial court in its memorandum of law, the Tennessee Rules of Criminal Procedure only apply to "criminal proceedings" – cases that "are clearly criminal in nature." Advisory Commission Comment to Tenn. R. Crim. P. 1. Because an action seeking the return of property is not "clearly criminal in nature," it cannot be a proper Rule 12(b) (pre-trial) motion pursuant to the criminal procedure rules. Accordingly, we find that Rule 41(g) of the Tennessee Rules of Criminal Procedure does not provide the trial court with subject matter jurisdiction.

## C.

In addition to Tennessee Code Annotated section 40-519, a statutory provision repealed by Chapter 399 of the Public Acts of 1979, the court in *State v. Moses*, 584 S.W.2d

825 (Tenn. Crim. App. 1979) referred to the provisions of Tennessee Code Annotated sections 52-1443(a)(4), (d), (d)(4), and (i). Tennessee Code Annotated section 52-1443 was transferred to Tennessee Code Annotated section 53-11-409, which in turn was transferred to Tennessee Code Annotated section 53-11-451.

The *Moses* court next reviewed Tennessee Code Annotated section 52-1404. The provisions of that section were transferred to section 53-11-201.

Tennessee Code Annotated section 52-1406 was next considered in *Moses*. The first sentence of section 52-1406 was transferred to section 53-11-203. The second sentence of section 52-1406 was transferred to section 53-11-202(f), which was repealed by Chapter 738, section 3(b) of the Public Acts of 1986.[9]

Chapter 399 of the Public Acts of 1979 was "AN ACT to repeal, amend or conform certain sections of Tennessee Code Annotated that are in conflict with or are substantially similar to the Tennessee Rules of Criminal Procedure." The Public Act's preamble reveals that the legislature noted that the Tennessee Rules of Criminal Procedure became effective on July 13, 1978, and that certain statutes enacted prior to that date either conflicted with the rules or stated "identically or substantially the same as the rules and are no longer necessary . . . ." The legislature found that it was "highly important and desirable to remove these inconsistent and superfluous provisions" and, therefore, repealed a multitude of statutory provisions, including Tennessee Code Annotated section 40-519. Public Acts 1979, Chapter 399, section 1. However, the fact that section 40-519, which dealt with the procedure to follow after sustaining a motion to suppress illegally obtained evidence – not at issue in the present case – was repealed does not automatically mean that the other holdings in *Moses* are no longer good law or that the entire case has been legislatively overruled. *See Moses*, 584 S.W.2d at 825-26.

---

[9]Tennessee Code Annotated section 53-11-202 was repealed by Public Acts 1986, Chapter 738, section 3(b). That Public Act was an Act relative to administrative procedures and agency rule making and was known as the "Administrative Rules and Procedures Reform Act of 1986." Public Acts 1986, Chapter 738, section 1. The Act amended Tennessee Code Annotated section 4-5-322 by deleting it in its entirety and substituting instead a new section. Chapter 738, section 2.

Tennessee Code Annotated section 4-5-322(a)(1) provides:

A person who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter, which shall be the only available method of judicial review. A preliminary, procedural or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy.

We find that *State v. Moses* continues to be good law. Indeed, it was relied upon by this court in *Hargrove v. State Department of Safety*, No. M2004-00410-COA-R3-CV, 2005 WL 2240970 (Tenn. Ct. App. Sept. 15, 2005) as follows:

> We reviewed the case and the statutes and determined that "the legislature has vested with the Commissioner of Safety the exclusive jurisdiction to initially determine whether property seized incidently to a violation of the Drug Control Act should be forfeited or returned to the lawful claimant." Thus, even the dismissal of the criminal case did not divest the authority of the Commission to determine whether or not to forfeit the vehicle.

2005 WL 2240970, at *2.

### D.

In regard to the appellants' contention that the requirements of the drug forfeiture statute were not met, we find the case cited by the appellants, *Watson v. Tennessee Department of Safety*, No. M2010-02193-COA-R3-CV, 2011 Tenn. App. LEXIS 535 (Tenn. Ct. App. Sept. 30, 2011), to be instructive. In *Watson*, the state conceded that it had violated the procedure for obtaining a forfeiture warrant pursuant to Tennessee Code Annotated section 40-33-204(b). The petitioner's property was sold prior to a forfeiture hearing being conducted. The petitioner argued "that the premature sale deprived the Department of Safety of jurisdiction and made the administrative proceedings a nullity." A panel of this court found "no support for Watson's argument that the premature sale of the property left the Department of Safety without jurisdiction." *Id.* at *17. Likewise, we find any improper notices of seizure in this matter did not deprive the Department of Safety jurisdiction.[10]

The *Watson* case involved property seized pursuant to Tennessee Code Annotated section 53-11-451. The court noted that

> [t]he Department of Safety has broad power to determine whether confiscated property is subject to forfeiture. Tenn. Code Ann. § 53-11-201 (2011); *see also Redd[ v. Tenn. Dept. of Safety]*, 895 S.W.2d [332,] 335 [(Tenn. 1995)]. The dismissal of a criminal case does not divest the authority of the Commissioner of Safety to determine whether personal property that has been

---

[10]We note that in the *Watson* case, the seizures occurred on January 25, 2001. Notices of property seizure were issued on February 16 and served on Watson's attorney on February 23, nearly a month after the property being confiscated.

seized under Tennessee's drug statutes should be forfeited. *Hargrove v. State*, No. M2004-00410-COA-R3-CV, 2005 Tenn. App. LEXIS 585, 2005 WL 2240970, at \*2 (Tenn. Ct. App. Sept. 15, 2005).

We note that the *Watson* opinion cited *Hargrove*, which relied upon *Moses*.

We find that viewing the seizures at issue as drug related was not improper.

All other issues raised by the appellants are pretermitted by our holding that the criminal court lacked jurisdiction or because no proof was taken to consider them.

## V. CONCLUSION

The ruling of the criminal court that it lacked jurisdiction is affirmed. This matter is remanded to the trial court for assessment of costs below. Costs of this appeal are assessed to the appellants, Charles A. Harmon, Fonda Gross, Charlana Harmon, Betty Cummings, Joshua Brown, Clyde E. McCarty, III, and Jeremy Bowling.

_____
JOHN W. McCLARTY, JUDGE