FILED

12/02/2022

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 18, 2022 Session

## JEREMY R. DURHAM v. TENNESSEE REGISTRY OF ELECTION FINANCE

**Appeal from the Chancery Court for Davidson County**
**No. 20-0877-II      Anne C. Martin, Chancellor**

_____

### No. M2021-01455-COA-R3-CV

_____

This case involves the imposition of a civil penalty by the Tennessee Registry of Election Finance as the result of multiple violations of the Campaign Financial Disclosure Act and the Campaign Contribution Limits Act. An appeal of the Registry's decision was decided by an Administrative Law Judge who generally affirmed the decision of the Registry but significantly reduced the civil penalty. After further review by the Registry, the penalty was largely reinstated. Upon further appeal, the Chancery Court affirmed the decision of the Registry. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Peter J. Strianse, Nashville, Tennessee, for the appellant, Jeremy Ryan Durham.

Herbert H. Slatery, III, Attorney General and Reporter, Andrée Sophia Blumstein, Solicitor General, and Janet M. Kleinfelter, Deputy Attorney General, for the appellee, Tennessee Registry of Election Finance.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

The Tennessee Registry of Election Finance ("TREF") is a Division of the Bureau of Ethics and Campaign Finance. TREF has statutory authority to administer and enforce

the provisions of both the Campaign Financial Disclosure Act[1] ("Disclosure Act") and the Campaign Contribution Limits Act[2] ("Contribution Act") (collectively, the "Acts") pursuant to Tennessee Code Annotated section 2-10-205. Specifically, among TREF's enumerated duties is its ability to "[i]nvestigate any alleged violation upon sworn complaint or upon its own motion." Tenn. Code Ann. § 2-10-206(a)(7). TREF also has the ability to "[a]ssess a civil penalty for any violation of the disclosure laws as provided by this part." Tenn. Code Ann. § 2-10-207(6). Specifically, according to the statute, "[c]ivil penalties may be assessed for any violation of the Campaign Financial Disclosure Act . . . and the Campaign Contribution Limits Act . . . provided, that [TREF] shall only have the power to assess a civil penalty after notice and opportunity for hearing." *Id.* As to the Disclosure Act, when TREF imposes a civil penalty for a violation thereof, the relevant statute, in pertinent part, provides:

> "Class 2 offense" means failing to file a report required by this part within thirty-five (35) days after service of process or receipt of notice by registered or certified mail of an assessment or any other violation of the requirements of this part. A Class 2 offense is punishable by a maximum civil penalty of not more than ten thousand dollars ($10,000) or fifteen percent (15%) of the amount in controversy, if 15% of the amount in controversy is greater than ten thousand dollars ($10,000).

Tenn. Code Ann. § 2-10-110(a)(2). As to the Contribution Act, the relevant statute, in pertinent part, provides:

> The registry of election finance may impose a maximum civil penalty for a violation of this part of not more than ten thousand dollars ($10,000) or one hundred fifteen percent (115%) of the amount of all contributions made or accepted in excess of the limitations established by this part, whichever is greater.

Tenn. Code Ann. § 2-10-308(a).

Appellant, Jeremy Durham, is a former member of the Tennessee House of Representatives. On June 6, 2016, the Attorney General and Reporter referred potential violations of the Disclosure Act and the Contribution Act to TREF involving Mr. Durham. TREF reviewed the referral at its June 8, 2016, meeting and voted unanimously to investigate Mr. Durham's campaign from the 2014 election cycle forward and to issue subpoenas, if necessary, "to any financial institution involving his personal, campaign and business activity." Pursuant to this investigation, TREF's staff conducted an audit on various accounts attributed to Mr. Durham for the 2014 and 2016 election cycles. The

---

[1] *See* Tenn. Code Ann. §§ 2-10-101 *et seq.*
[2] *See* Tenn. Code Ann. §§ 2-10-301 *et seq.*

audit was completed in February of 2017 and presented to TREF prior to its February 28, 2017, meeting. The results of the audit found a combined total of approximately 300 unique statutory violations of the Disclosure Act and the Contribution Act.[3] In summary, Mr. Durham's violations could be categorized as reporting violations, excess contribution violations, personal use violations, and a failure to maintain records. At its meeting, TREF voted unanimously to approve the audit and refer it to the Tennessee Ethics Commission. TREF also voted unanimously to issue Mr. Durham a "Show Cause Notice" concerning certain findings. TREF requested that Mr. Durham's response to the notice be provided by May 1, 2017. TREF also mailed Mr. Durham correspondence titled "Notice of Possible Assessment of Civil Penalties against You" on February 28, 2017, identifying each potential violation of the Acts. This letter also informed Mr. Durham that he had "the right to submit sworn statements, along with any pertinent attachments, as an explanation as to why civil penalties should not be assessed[.]"

On May 1, 2017, Mr. Durham submitted a sixty-page response to TREF's "Show Cause Notice," addressing the potential violations. Attached to the response were approximately fifty documents which were ostensibly tendered as evidence. This response was neither sworn to nor signed by Mr. Durham. Rather, it was signed by Mr. Durham's counsel and contained the following disclaimer:

> Although Mr. Durham provided very important facts for this Response to the Report and Show Cause, the great majority of this document was prepared by Mr. Durham's campaign advisors. Thus, not every word in this Response is directly attributable to Mr. Durham.

The "campaign advisors" remained anonymous, and the response was not sworn to by anyone. As a result, TREF concluded that the response did not satisfy the requirements of its rules, which provide that:

> The candidate, designees of a candidate, or committee must be provided an opportunity to submit a sworn statement to the Registry which has been sworn to before a notary public, along with any pertinent attachments, to show why civil penalties should not be assessed.

Tenn. Comp. R. & Regs. 0530-01-01-.11(b).

On June 7, 2017, the show cause hearing was held before TREF, and based on the requirements of the above-quoted rule, TREF voted unanimously to disallow Mr. Durham's unsworn response as competent evidence for purposes of the hearing. Mr. Durham did not personally appear at this hearing, and no other evidence was presented outside of the sixty-page document. Ultimately, at the close of the hearing, TREF voted to

---

[3] Each of the violations found under the Disclosure Act constituted a "Class 2 offense."

assess civil penalties amounting to $465,500.00 against Mr. Durham resulting from multiple violations of both the Disclosure Act and the Contribution Act. On July 11, 2017, TREF issued an order assessing these penalties based on the audit and the related findings in accordance with the relevant statutes.

On August 4, 2017, Mr. Durham appealed the order. At an August 9, 2017, meeting, TREF voted to allow the appeal to proceed. Subsequently, on April 25, 2018, TREF issued a "Notice of Hearing" to Mr. Durham, stating that a hearing pursuant to the Uniform Administrative Procedures Act was set before an administrative law judge ("ALJ"). An order was later entered setting the final hearing date for February 12, 2019. That order stated in pertinent part as follows:

> This hearing will be conducted pursuant to the Tennessee Uniform Administrative Procedures Act, T.C.A. § 4-5-101 *et seq.*, and the Uniform Rules of Procedure for Hearing Contested Cases before State Administrative Agencies, Rule 1360-4-1 *et seq.* . . . Discovery is allowed and shall be controlled pursuant to the foregoing and the Tennessee Rules of Civil Procedure. The presentation and admission of evidence shall be controlled by the foregoing as well as the Tennessee Rules of Evidence.

On February 6, 2019, TREF filed a "List of Exhibits and Witnesses." The case was later reset for hearing on June 4, 2019, and at that hearing, TREF offered four exhibits in its case-in-chief while no evidence was offered on behalf of Mr. Durham nor were TREF's witness and evidence challenged.

On November 1, 2019, the ALJ issued an "Initial Order" reducing the civil penalty to $110,000.00. TREF met on November 13, 2019, and it voted to review the ALJ's "Initial Order." That same day, TREF issued a written notice of its intent to review the ALJ's "Initial Order" pursuant to Tennessee Code Annotated section 4-5-315 and provided notification that it would review three discrete issues, including whether the "Initial Order erred, in whole or in part, by reducing the civil penalties levied against [Mr. Durham] by [TREF]."

On December 3, 2019, TREF issued a scheduling order that required the parties to file briefs on the issues by January 17, 2020, and it set the matter for March 27, 2020. The Tennessee Attorney General's Office filed its brief on behalf of TREF on January 17, 2020. On January 24, 2020, Mr. Durham filed a "Motion to Modify Scheduling Order to Enlarge Time to File Brief," in which he sought an extension until February 7, 2020, to file his brief. On January 28, 2020, TREF issued a "Revised Scheduling Order," granting Mr. Durham an extension until February 7, 2020, to file his brief. On or about February 10, 2020, TREF's Executive Director received a call from Mr. Durham's counsel, who stated that he had not received the "Revised Scheduling Order" until on or about February 7, 2020, and requested additional time to file the brief. TREF's Executive Director informed

Mr. Durham's counsel that such a request needed to be submitted in writing for TREF's consideration. The Executive Director also memorialized this information in an email to Mr. Durham's counsel. However, Mr. Durham did not submit such a request in writing, nor did he submit a brief.

Due to issues surrounding the COVID-19 pandemic, TREF issued a "Revised Scheduling Order" on March 17, 2020, that cancelled the March 27th hearing and continued the matter indefinitely. On May 27, 2020, TREF entered another "Revised Scheduling Order," setting the hearing for June 10, 2020. On June 6, 2020, Mr. Durham sent an email to TREF's Executive Director, stating that he had a conflict with the scheduled hearing date. The Executive Director forwarded the email to Mr. Durham's counsel, informing him that a written request for a continuance would need to be submitted to TREF for consideration. No such request was ever filed, and TREF declined to continue the matter. Neither Mr. Durham nor his counsel appeared at the June 10th hearing.

On July 8, 2020, TREF issued a "Final Order" which reinstated the civil penalty amount but reduced it by $5,000.00 for a total penalty amount of $460,500.00. On September 4, 2020, Mr. Durham filed a "Petition for Judicial Review" in the Chancery Court of Davidson County ("trial court"), seeking a review of TREF's final order. Mr. Durham asked that the penalty assessed against him be vacated, contending that TREF's "Final Order" was in violation of constitutional or statutory provisions and made upon unlawful procedure. In an order entered November 8, 2021, the trial court rejected Mr. Durham's contentions and affirmed TREF's order. Subsequent to the entry of this order, Mr. Durham filed an appeal with this Court.

**ISSUES PRESENTED[4]**

Mr. Durham presents numerous issues for our review on appeal, which we revise and restate as follows:

1. Whether Mr. Durham's due process rights were violated.

2. Whether TREF's reassessment of Mr. Durham's civil penalty constitutes an excessive fine under the Eighth Amendment of the United States Constitution or Article I, Section 16 of the Tennessee Constitution.

3. Whether the trial court applied the incorrect legal standard.

---

[4] Mr. Durham also raises an additional issue concerning the general notion that the trial court erred in affirming TREF's decision to reinstate his civil penalty. To the extent that he purports to raise this as an issue separate from the other issues, he offers no discernable argument in his brief on appeal. Accordingly, we deem this issue waived.

## DISCUSSION

The matter now before us falls under the Uniform Administrative Procedures Act. *See* Tenn. Code Ann. §§ 4-5-101 *et seq.* Pursuant to Tennessee Code Annotated section 4-5-322, "[a] person who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter, which shall be the only available method of judicial review." Tenn. Code Ann. § 4-5-322(a)(1). The reviewing court "may affirm the decision or remand the case for further proceedings." Tenn. Code Ann. § 4-5-322(h). The court may also

> reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> > (1) In violation of constitutional or statutory provisions;
> > (2) In excess of the statutory authority of the agency;
> > (3) Made upon unlawful procedure;
> > (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> > (5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.
> >
> > > (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h).[5] Such a review is confined to the record. Tenn. Code Ann. § 4-5-322(g). However, "[i]n cases of alleged irregularities in procedure before the agency, not shown in the record, proof thereon may be taken in the court." Tenn. Code Ann. § 4-5-322(g). The standard of review remains the same for both the Chancery Court and the Court of Appeals. *Yokley v. State Bd. of Educ.*, 305 S.W.3d 523, 526 (Tenn. Ct. App. 2009). The narrow standard of review applicable in these cases "reflects the general principle that courts should defer to decisions of administrative agencies when they are acting within their area of specialized knowledge, experience, and expertise." *StarLink Logistics Inc. v. ACC, LLC*, 494 S.W.3d 649, 669 (Tenn. 2016). It is not the job of this Court to substitute its judgment concerning the weight of the evidence as it pertains to questions of fact. Tenn. Code Ann. § 4-5-322(h)(5)(A).

Mr. Durham, as noted above, has set forth various arguments on appeal as to why

---

[5] Subsequent to the filing of Mr. Durham's petition for judicial review, this statute was modified, effective May 18, 2021. This modification was applicable to matters under Tennessee Code Annotated Title 63.

the civil penalties imposed against him by TREF were erroneous. We will address each of his arguments in turn.

*Due Process*

The crux of Mr. Durham's appeal centers on his contention that TREF and the trial court violated his due process rights. Specifically, Mr. Durham maintains that his due process rights were violated by TREF's failure to accept what he purports to be his "responsive pleading," the "mixing of prosecutorial and advisory duties," the alleged lack of impartiality of the governing board, and the refusal to allow Mr. Durham to present his arguments at a show cause hearing. We are not convinced by Mr. Durham's arguments that any error has occurred.

First, Mr. Durham maintains that TREF's failure to accept his sixty-page letter violated his due process rights. In his brief, Mr. Durham argues that, by ignoring his "responsive pleading," TREF violated Tennessee Code Annotated section 4-5-308(a), which provides: "The administrative judge or hearing officer, at appropriate stages of the proceedings, shall give all parties full opportunity to file pleadings, motions, objections and offers of settlement." Mr. Durham relies on this statute, stating that it "does not allow [TREF] to reject a responsive pleading for any reason, let alone when their counsel collaborates with other individuals or even if the contents of a responsive pleading *could* implicate evidentiary concerns." Based upon our review of the record, we find no merit in Mr. Durham's argument that his due process rights were violated when TREF disallowed his letter. "[T]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Bailey v. Blount Cty. Bd. of Educ.*, 303 S.W.3d 216, 231 (Tenn. 2010) (quoting *Mathews v. Eldridge*, 423 U.S. 319, 334-35 (1976)). Contrary to Mr. Durham's argument, and applicable to the standard enumerated above, we find that Mr. Durham was indeed afforded the opportunity to be heard in a "meaningful time and in a meaningful manner"; however, Mr. Durham simply did not properly avail himself of that opportunity by failing to proceed in accordance with the applicable rules. Here, Mr. Durham was before TREF pursuant to a show cause order concerning certain purported violations. According to TREF's promulgated rules:

> (a) The candidate, designee of a candidate, or committee shall be provided an opportunity to personally appear before [TREF] at its next regularly scheduled meeting to show why civil penalties should not be assessed; or
> (b) The candidate, designee of a candidate, or committee must be provided an opportunity to submit a **sworn statement** to [TREF] which has been sworn to before a notary public along with any pertinent attachments, to show why civil penalties should not be assessed.

Tenn. Comp. R. & Regs. 0530-1-01-.11(1) (emphasis added); *see also Swift v. Campbell*, 159 S.W.3d 565, 572 (Tenn. Ct. App. 2004) (noting that administrative rules and

regulations have the force and effect of law in Tennessee).  In this case, TREF issued a show cause notice to Mr. Durham.  Mr. Durham did not personally appear before TREF nor was the letter Mr. Durham submitted a sworn statement as plainly required by TREF's rules.[6]  Mr. Durham attempts to argue that, despite this failure to comply with the pertinent rules, his letter should have been considered and the denial of such "essentially silenced [his] ability to meaningfully defend himself."  We are not convinced.  The rules espoused above are clear in their requirements and therefore provided Mr. Durham with an opportunity to be meaningfully heard before TREF.[7]  His failure to adhere to these rules does not warrant a finding that his due process rights were violated.  We find no error in the exclusion of Mr. Durham's letter.

Mr. Durham's next argument on appeal is that TREF "inappropriately and illegally allowed the administrative law hearing prosecutors to play critical roles in [TREF's] deliberations[.]"  Specifically, Mr. Durham maintains that an attorney acted as a prosecutor during his contested case hearing and then played a role in TREF's deliberations.  Relying on *Martin v. Sizemore*, 78 S.W.3d 249 (Tenn. Ct. App. 2001), Mr. Durham highlights the following statements concerning the duality of roles:

> A combination of prosecutorial and adjudicative functions is the most problematic combination for procedural due process purposes.  A prosecutor, by definition, is a partisan advocate for a particular position or point of view.  The role is inconsistent with the objectivity expected of administrative decision-makers.  Accordingly, to permit an advocate for one party to act as the legal advisor for the decision-maker creates a substantial risk that the advice given to the decision-maker will be skewed.  However, the risk of bias becomes intolerably high only when the prosecutor serves as the decision-maker's advisor in the same or a related proceeding.  Thus, an administrative agency's staff counsel may permissibly prosecute a case before the agency when an independent hearing officer presides over the contested case hearing and the prosecutor plays no role in the agency's deliberation.

*Id.* at 265 (internal citation omitted).  In its order, the trial court found that "while [the attorney] prosecuted the charges against [Mr. Durham] before [TREF], she did not advise or counsel [TREF] on a position. Instead, [the attorney] merely answered questions from the board."  The trial court also noted that "[TREF's] board members appear cognizant of

---

[6] In the hearing before the ALJ, the ALJ also found that Mr. Durham's letter was not sworn to and thus declined to admit it as an exhibit.

[7] In his brief, Mr. Durham maintains that the ALJ agreed that his letter constituted a responsive pleading and, thus, should have been considered.  We disagree.  In his findings, the ALJ determined that Mr. Durham's letter did not comply with the Rules of Evidence or an exception thereto, however, the ALJ accepted it as a **pleading** only for the purpose of "giving [him] some road map to Mr. Durham's positions." (emphasis added)  However, we do not find this pertinent as to whether his letter constitutes a sworn statement as required by TREF's rules.

[the attorney's] prosecutor role by phrasing questions as to 'the state's position.'" Having carefully reviewed the record, we agree with the trial court. Contrary to Mr. Durham's argument, we do not find that the record supports the notion that the attorney's responses to TREF constituted legal advice or counsel. As such, we find no error in this regard.

Mr. Durham's third argument relative to his due process issue concerns his contention that TREF violated his due process because it was partial concerning his case. The trial court determined that Mr. Durham had waived this issue because he failed to raise it during administrative proceedings. We agree. According to Tennessee Code Annotated section 4-5-302(a):

> (a) Any administrative judge, hearing officer or agency member shall be subject to disqualification for bias, prejudice, interest or any other cause provided in this chapter or for any cause for which a judge may be disqualified.
> (b) Any party may petition for the disqualification of an administrative judge, hearing officer or agency member promptly after receipt of notice indicating that the individual will serve or, if later, promptly upon discovering facts establishing grounds for disqualification.

Tenn. Code Ann. § 4-5-302. Mr. Durham had the burden to seek a disqualification of what he purported to be partial or biased members of TREF's board. *See Anderson Cty. v. Tenn. State Bd. of Equalization*, No. E2018-00142-COA-R3-CV, 2020 WL 762511, at *6 (Tenn. Ct. App. Feb. 14, 2020) (holding that "parties to an administrative action have the affirmative burden of seeking disqualification" and failure to do so warrants waiver). "It is no less incumbent for a party to an administrative proceeding to raise issues of procedural irregularity than it is for a party in a judicial proceeding." *McClellan v. Bd. of Regents of State Univ.*, 921 S.W.2d 684, 691 (Tenn. 1996). "The administrative tribunal, like the trial court, must be given the opportunity to correct procedural errors," and "[a]llowing parties to acquiesce in the procedures, but to challenge those same procedures on appeal is inefficient and unreasonable." *Id.* Here, Mr. Durham did not raise an objection concerning partiality before TREF. Mr. Durham may not now attempt to argue any such procedural irregularities on appeal. Additionally, when Mr. Durham raised the issue before the trial court, there was no indication that he had learned the facts that might lead to disqualification *subsequent* to the second show cause hearing, thus potentially permitting review of that issue before the trial court. In light of the foregoing, we find his argument waived.

Mr. Durham's final argument involves his contention that TREF violated his due process rights by limiting his arguments and testimony at TREF's June 10th hearing and during his petition for judicial review. As to the issues argued at the June 10th hearing, Mr. Durham maintains that TREF "hand-picked" certain issues without allowing any deviation on his part. According to Tennessee Code Annotated section 4-5-315, an agency "upon the agency's motion may . . . review an initial order[.]" Tenn. Code Ann. § 4-5-

315(a). Pursuant to this statute, TREF issued a notice of its intent to review the initial order and identified three separate issues which it intended to review. Mr. Durham claims that TREF's limitation of its review to three specific issues impeded and limited the arguments he could present before TREF at the hearing. Mr. Durham's argument fails to recognize the provisions of Tennessee Code Annotated section 4-5-315(b), which states, in pertinent part: "A petition for appeal from an initial order shall be filed with the agency, or with any person designated for such purpose by rule of the agency, within fifteen (15) days after entry of the initial order." Tenn. Code Ann. § 4-5-315(b). As such, Mr. Durham was well within his rights to file his own petition and identify the issues of which he sought review. He failed to do so and, therefore, we find his argument as to the June 10th hearing to be without merit.

As to Mr. Durham's argument insofar as it pertains to his petition for judicial review hearing, Mr. Durham contends that the trial court had the "opportunity to correct [TREF's] mistakes" but did not do so and further violated his due process rights. Specifically, Mr. Durham relies on Tennessee Code Annotated section 4-5-322(g), which provides as follows:

> The review shall be conducted by the court without a jury and shall be confined to the record. In cases of alleged irregularities in procedure before the agency, not shown in the record, proof thereon may be taken in the court.

Tenn. Code Ann. § 4-5-322(g). Citing this statute, Mr. Durham argues that it was incumbent on the trial court to correct TREF's mistakes and appears to contend that he did not have to petition the trial court to do so. We find no merit to Mr. Durham's argument in this regard. Rather, the statute states that proof of alleged irregularities **"may"** be taken in court. That language in and of itself does not indicate any type of mandatory action required to be taken by the trial court. Moreover, contrary to Mr. Durham's argument, Tennessee Code Annotated section 4-5-322(e) provides that,

> [i]f, before the date set for hearing, application is made to the court for leave to present additional evidence, and it is shown to the satisfaction of the court that the additional evidence is material and there were good reasons for failure to present it in the proceeding before the agency, the court may order that the additional evidence be taken before the agency upon conditions determined by the court.

Tenn. Code Ann. § 4-5-322(e). Accordingly, the statutory framework provided Mr. Durham with an avenue to petition the court to allow the presentation of additional evidence before the agency. He failed to do so. We find no error.

*Whether Mr. Durham's Civil Penalty is Unconstitutionally Excessive*

Mr. Durham's next issue on appeal concerns whether his civil penalty should be set aside as excessive under both the United States Constitution and the Tennessee Constitution. The Eighth Amendment of the Constitution and Article I, Section 16 of the Tennessee Constitution "both provide that excessive bail 'shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.'" *Stuart v. State Dep't of Safety*, 963 S.W.2d 28, 34 (Tenn. 1998). Tennessee courts construe the excessive fines clause of Article I, Section 16 "to be coextensive" with the United States Constitution. *Id.* (citing *State v. Harris*, 844 S.W.2d 601, 603 (Tenn. 1992); *State v Black*, 815 S.W.2d 166, 188–89 (Tenn. 1991)). In *United States v. Bajakajian*, 524 U.S. 321 (1998), the Supreme Court of the United States noted that:

> This Court has had little occasion to interpret, and has never actually applied, the Excessive Fines Clause. We have, however, explained that at the time the Constitution was adopted, "the word 'fine' was understood to mean a payment to a sovereign as punishment for some offense." The Excessive Fines Clause thus "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'"

*Id.* at 327–28 (internal citation omitted). While the gravamen of *Bajakajian* concerned the matter of a civil forfeiture, we note that its analysis was predicated on the Excessive Fines Clause. "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense it is designed to punish." *Bajakajian*, 524 U.S. at 334. Accordingly, the question as to whether a penalty is disproportionate to the offense calls for a facts-based inquiry. *Id.* at 336–37 n.10. The *Bajakajian* court set forth four separate factors to consider when determining whether a fine is unconstitutionally excessive. *Id.* at 337–39. These factors include: (1) the nature of the crime and its relation to other illegal activities; (2) whether the defendant "fit into the class of persons for whom the statute was principally designed"; (3) "the maximum sentence and fine that could have been imposed"; and (4) "the nature of the harm caused by the [defendant's] conduct." *United States v. Collado*, 348 F.3d 323, 328 (2d Cir. 2003) (citing *Bajakajian*, 524 U.S. at 337–39). Accordingly, we will address this issue pursuant to the factors espoused above.

First, TREF found that Mr. Durham had committed numerous violations of both the Disclosure Act and the Contribution Act, including failing to report certain items and the misuse of campaign funds. In total, there were approximately 300 separate violations. A subset of these violations concerned the misuse of campaign funds in the amount of more than $80,000.00, which is a violation of Tennessee Code Annotated section 2-10-114(b). As to the second factor, it is clear that Mr. Durham fits into the class of individuals for which the "statute was principally designed" as the statute was enacted in order to regulate financing as it pertains to election campaigns in the State of Tennessee. Third, the penalty

assessed against Mr. Durham is within the maximum fine that could have been imposed. As noted earlier, a violation of the Contribution Act is subject to a civil penalty of "not more than ten thousand dollars ($10,000) or one hundred fifteen percent (115%) of the amount of all contributions made or accepted in excess of the limitations established by this part, whichever is greater." Tenn. Code Ann. § 2-10-308(a). Moreover, a Class 2 offense under the Disclosure Act, which is also at issue here, is subject to "a maximum civil penalty of not more than ten thousand dollars ($10,000) or fifteen (15%) of the amount in controversy," whichever is greater. Tenn. Code Ann. § 2-10-110(a)(2). Here, there were approximately 300 violations and, pursuant to the statutes, Mr. Durham could have been subjected to a penalty for *each* of these violations, the total of which was estimated to be more than $3 million. In determining whether Mr. Durham's civil penalty is excessive, we note the existence of case law wherein courts have held that "there is no constitutional violation when the forfeiture does not exceed the maximum fine allowed by statute." *United States v. Hill*, 167 F.3d 1055, 1072–73 (6th Cir. 1999) (citing *United States v. Elder*, 90 F.3d 1110, 1132–33 (6th Cir. 1996)). Here, Mr. Durham was assessed a civil penalty for these violations in the amount of $460,500.00. This is well below the statutory maximum of the penalty he could have received. Finally, as to the fourth factor, we similarly find that this weighs against Mr. Durham. The Tennessee Supreme Court has noted the interest in "protecting the integrity and fairness of the political process." *Bemis Pentecostal Church v. State*, 731 S.W.2d 897, 904 (Tenn. 1987). Specifically, the Supreme Court stated that

> [t]he availability of such information not only underwrites the reliability of election results as a reflection of popular will, but it also preserves the integrity of the system by deterring corruption and the appearance of corruption. Disclosure assures contributors that their money has been spent in the manner for which it was solicited or for which it was donated. Prevention of fraudulent fund-raising or of funding of campaign activity by front organizations is made more feasible, justifying disclosure both of contributions and expenditures as two sides of the same coin. Records-keeping and routine disclosure further these State interests by preserving a paper trail by which the conversion of contributions into legitimate expenditures may be traced.

*Id.* Accordingly, in light of the plethora of violations found to have been committed by Mr. Durham, we find that the State's interest in "protecting the integrity and fairness of the political process" here to be not only implicated but severely contravened. Accordingly, we do not find that the civil penalty assessed here is unconstitutionally excessive.

### *TREF's Other Purported Errors*

Mr. Durham's last issue on appeal focuses on two arguments. First, he argues that,

although the trial court correctly identified the substantial and material evidence standard to be controlling, it failed to correctly analyze the record. Second, Mr. Durham argues that the trial court violated Rule 201 of the Tennessee Rules of Evidence by declining to take judicial notice of registry policies and prior civil penalty assessments. We will address each of these separately.

As to his first argument concerning the substantial and material evidence standard, Mr. Durham contends that the trial court misapplied the test and therefore reached an incorrect result. Specifically, Mr. Durham cites *Martin*, noting that "[t]he substantial and material evidence standard requires a searching and careful inquiry into the record to determine the basis for the administrative decision" and courts "review the record for such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." *Martin*, 78 S.W.3d at 275. Mr. Durham argues that the trial court did not "engag[e] in a full analysis," and states that, while he failed to submit evidence, the absence of any evidence submitted by him does not suggest that TREF's evidence alone is sufficient to justify its positions. We find Mr. Durham's argument in this regard to be without merit. As noted previously, our judicial review, as was the trial court's, is confined to the record on appeal. Based upon our review, we conclude that the trial court assessed the record and reviewed the administrative agency's decision – as noted in *Martin* – and determined there was substantial and material evidence to affirm TREF's decision. We agree and find no error.

Mr. Durham's final argument centers on his contention that the trial court failed to take judicial notice of certain purported evidence pursuant to Rule 201 of the Tennessee Rules of Evidence. According to the trial court's order, Mr. Durham requested, at oral argument, that the court take judicial notice of certain information. However, we can find no citation to the record in Mr. Durham's brief on appeal which directs us to what specific and actual information he wanted the trial court to take judicial notice of. As such, we find this issue waived.

## CONCLUSION

Based on the foregoing, the trial court's order is affirmed.

_s/ Arnold B. Goldin_
ARNOLD B. GOLDIN, JUDGE
